*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SANDRA J. RUSCH, | ) | |
| | ) | Supreme Court Nos. S-17069/17070 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Alaska Workers' Compensation |
| | ) | Appeals Commission No. 17-001 |
| SOUTHEAST ALASKA REGIONAL | ) | |
| HEALTH CONSORTIUM and ALASKA | ) | O P I N I O N |
| NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| | ) | No. 7422 - December 6, 2019 |
| | ) | |
| BRENDA DOCKTER, | ) | |
| | ) | Alaska Workers' Compensation |
| Appellant, | ) | Appeals Commission No. 17-002 |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHEAST ALASKA REGIONAL | ) | |
| HEALTH CONSORTIUM and ALASKA | ) | |
| NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| | ) | |

Appeals from the Alaska Workers' Compensation Appeals Commission.

Appearances: J. John Franich, Franich Law Office, LLC, Fairbanks, for Appellants. Michael A. Budzinski, Meshke Paddock & Budzinski, Anchorage, for Appellees.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen,
and Carney, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

An attorney began representing two injured workers after both encountered difficulties representing themselves in their workers' compensation claims against the same employer.  Both claimants then successfully resolved their claims through mediation, with both receiving substantial settlements.  The parties were unable to resolve the question of their attorney's fees, so the Alaska Workers' Compensation Board held hearings on that issue.  The Board limited the witnesses at the hearings and ultimately awarded significantly reduced attorney's fees in both claims.  The Alaska Workers' Compensation Appeals Commission affirmed the Board's decisions.  Because the Commission incorrectly interpreted our case law about attorney's fees, because the Board denied the claimants the opportunity to present witnesses, and because the amount of attorney's fees awarded to both claimants was manifestly unreasonable, we reverse in part the Commission's decisions and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Factual Summary Of Each Case Through Settlement

#### 1.    *Rusch v. Southeast Alaska Regional Health Consortium*

In June 2012 Sandra Rusch injured her back while working for Southeast Alaska Regional Health Consortium (SEARHC) at its clinic in Klawock.  Her healthcare providers imposed various lifting restrictions while she received treatment.  SEARHC filed a controversion in October 2012 claiming it had no evidence to support time loss from work.  Rusch had fusion surgery on her lumbar spine in January 2013.  Medical

records show that doctors disagreed about the degree of "incorporation" of the fusion. After the surgery Rusch's healthcare providers continued restrictions on lifting.

In January 2013 SEARHC paid Rusch temporary partial disability (TPD) from June through December 2012 and began to pay temporary total disability (TTD) as of early January. At about the same time SEARHC sent a form notice to the Reemployment Benefits Section of the Board informing it that Rusch had "been totally unable to return to [her] employment at the time of injury for 45 consecutive days as a result of the injury," beginning on June 24, 2012.[1] Its insurance adjuster handwrote that Rusch had received TPD from June 2012 until mid-December 2012 and had begun to receive TTD in early January 2013. The only communication in the record from the Board about reemployment benefits is a brief email to Rusch asking her to call if she had questions.

Rusch was laid off from her job, purportedly due to a reduction in force, in April 2013. Rusch had been disciplined the previous month for an incident she said was related to "not lifting up to 50 pounds" as her job description required. Rusch's surgeon had released her to "light duty as tolerated" effective March 1, 2013. The position she previously held was advertised the month after her layoff and included the ability to lift 70 pounds as a job requirement.

In 2014 SEARHC offered Rusch "$15,000.00 in medical benefits to help defray the cost of additional care other than fusion revision, if medically necessary within the first year following Board approval" of a settlement; in exchange Rusch would give

---

[1] *See* AS 23.30.041(c) (requiring notice of reemployment benefits to an employee who has been unable to return to work for 45 consecutive days because of a work-related injury). "Reemployment benefits are intended to return an injured worker to remunerative employment when she cannot return to her former job or jobs for which she has the relevant training or experience." *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 607 (Alaska 2016).

up all other compensation. The proposed agreement made clear that Rusch's future medical benefits would be "restricted," specifically providing that SEARHC would "be responsible for medical and related transportation benefits relating only to fusion revision, if medically necessary within one year from the date of [Board] approval or rejection of this Agreement." Rusch initially agreed, but she did not sign SEARHC's proposed settlement document. SEARHC's attorney, Theresa Hennemann, informed Rusch in May 2015 that her settlement authority had lapsed and that the workers' compensation insurance carrier would be closing its file related to her claim.

Attorney David Graham of Sitka entered an appearance and filed a written claim on Rusch's behalf in June 2015, seeking a number of compensation benefits including TTD, permanent partial impairment (PPI), medical costs, and reemployment benefits, and also claiming unfair or frivolous controversion. SEARHC filed an answer and a controversion in late July denying that any further compensation was owed. In October SEARHC offered to settle all claims for a total of $15,000, with $10,000 for future medical benefits and $5,000 for attorney's fees. Rusch did not accept the offer.

The case was contentious, with a number of discovery disputes. The parties later resolved all claims except attorney's fees through mediation. The settlement agreement preserved Rusch's claim for attorney's fees and costs and required SEARHC to pay $1,000 to one medical provider and an additional $100,000 to Rusch. The Board approved the settlement in early August 2016.

### 2. *Dockter v. Southeast Alaska Regional Health Consortium*

In February 2014 Brenda Dockter injured her left knee while working for SEARHC in Sitka. After physical therapy and medication did not resolve her pain complaints, she had arthroscopic knee surgery, which improved her symptoms but did not resolve them entirely. All doctors who examined her, including SEARHC's

orthopedic physicians, said she would at some point need further knee surgery as a result of the work injury.

In June 2015, based on its doctor's opinion, SEARHC controverted physical therapy and two medications. Dockter's treating orthopedic physician recommended in October 2015 that she undergo a partial knee replacement. The surgeon's office asked SEARHC to preauthorize the surgery; through its attorney, Hennemann, SEARHC informed the doctor it was "not in a position to preauthorize surgery at this time" [emphasis in original] because in its view Dockter's pain complaints did "not appear to be supported by objective medical evidence." If SEARHC sought an opinion from one of its orthopedic physicians about the partial knee replacement, it did not submit that opinion to the Board.

After Dockter sought clarification, Hennemann reiterated SEARHC's refusal to preauthorize the surgery, informing Dockter that she could "make [her] own arrangements." As an alternative SEARHC offered to settle the claim on the following terms: SEARHC would pay medical expenses for the partial knee replacement and follow-up care (excluding physical therapy) and a lump sum of $21,024 (representing TTD, PPI, and a sum for physical therapy); in exchange Dockter would waive all future workers' compensation benefits except for follow-up care related to the partial knee replacement occurring within eight months of the Board's approval of the settlement.

Dockter filed a written claim seeking unspecified medical benefits in August 2015, and the Board held its first prehearing conference on the claim the following month. At this prehearing conference, SEARHC indicated it had "accepted compensability for medical . . . costs relating to [Dockter's] left knee" with limited exceptions unrelated to the partial knee replacement. A second prehearing conference was held in late November "to review the status of [Dockter's] injuries/treatment and claims." Dockter explained she had requested preauthorization for her knee surgery, and

SEARHC told the prehearing conference officer that "no controversion [was] in place regarding the knee injury/treatment." According to the prehearing conference summary, "[w]hen asked why [SEARHC] will not pre-authorize the surgery, [SEARHC] stated that 'they were not saying that the surgery was not medically necessary, just that there is not yet any objective evidence to support the surgery.' " The prehearing conference officer, after quoting AS 23.30.095(a),[2] thought one issue — whether Dockter was "entitled to an order" requiring SEARHC to pay for the surgery — was "ripe for a hearing" and set another prehearing conference to schedule this hearing.

Hennemann wrote to the Board shortly afterward, taking the position that SEARHC was "simply choosing to exercise [its] statutory right" to "take up to 30 days to consider whether payment or denial should issue after" the doctor billed it for the surgery. SEARHC objected to a prehearing conference on scheduling because Dockter had not filed an affidavit of readiness for hearing.

On December 8 Graham entered an appearance for Dockter and filed another written claim on her behalf. The parties agreed they were not yet ready for a hearing. After obtaining discovery from SEARHC, Graham wrote a demand letter to Hennemann in early February 2016; there he summarized the medical evidence supporting the surgeon's recommendation and informed her that because SEARHC refused to preauthorize the surgery, the doctor would not perform the surgery without prepayment, which Dockter could not afford. Graham told Hennemann that he would "request further assistance from the Board" if SEARHC did not clearly communicate to the surgeon that it would preauthorize the surgery by a certain date.

---

²        AS 23.30.095(a) requires the employer to "furnish medical, surgical, and other . . . treatment . . . which the nature of the injury . . . requires" within the first two years of a work-related injury.

Hennemann responded that SEARHC "would not stand in the way of" a hearing on what she called an "advisory ruling[]" from the Board about the compensability of the surgery and suggested as an alternative that Dockter "find a different physician who would not require payment before surgery"; she indicated she would "encourage" her clients to "consider" a request for a change in physicians if Dockter found such a surgeon.

On February 9 Dockter filed an affidavit of readiness for hearing, a request for an emergency conference, and a request for "an immediate hearing" on the "prospective determination of [the] compensability" of the knee surgery. On February 18 SEARHC told the Board it agreed the knee surgery "would be compensable and payable under the Act," making a hearing on that issue unnecessary. It later insisted, however, that it had not preauthorized the surgery. Dockter had the surgery in March 2016.

The parties mediated the remaining disputes and reached agreement on all issues except attorney's fees. The Board approved the settlement in August 2016. Under its terms, Dockter agreed to release SEARHC from further claims (except attorney's fees and costs) in exchange for an additional $122,500.

### B. Procedure In Both Cases Following Mediation

Billing records from both attorneys suggest they remained in contact with the mediator about the attorney's fees disputes after settlement. Hennemann's July 2016 billing records included entries related to a "memo to mediator" about fee issues as well as communications with the mediator and both her clients about fee issues. Hennemann submitted her billing records only through July 2016, so the record does not reveal whether she communicated further with the mediator in August. Graham submitted to the mediator a document he called a "mediation brief" that addressed specific concerns raised by SEARHC as well as the mediator's responses to them. No mediation occurred,

however, and the mediator wrote to the attorneys in September acknowledging their request for a hearing on attorney's fees, "which the parties were unable to resolve through mediation."

The Board scheduled two hearings on the same day to resolve the attorney's fees disputes in both cases. The lead-up to the hearings was contentious. The prehearing conference summaries set an October 19 deadline for submission of witness lists but also allotted time for argument equal to the total time scheduled for hearing. Hennemann wrote to the Board on October 14 because Graham intended to call witnesses at the hearings and she thought this was "inconsistent with the discussions and agreements for proceeding." Graham responded that on October 7 he had spoken with a Board employee who told him he "would not need to request amendment or clarification of the prehearing conference summary in order to" present witnesses at the hearing. The issue was not addressed until the hearing.

Graham submitted an affidavit of fees for each case, seeking an hourly fee of $425. He sought payment for 277.55 hours in Rusch's case and 180 hours in Dockter's case. The witness list in each case included Graham, three other attorneys, and the claimant in that case. The proposed attorney witnesses either practiced workers' compensation law in Alaska or were familiar with Graham's legal experience.

The Board held both hearings on October 25, 2016. The Board decided to "go through some preliminary issues" in both cases at once, then proceed separately with argument related to each case individually. Both claimants attended telephonically (and later testified) during the joint proceeding. SEARHC objected to all of the witnesses except Graham, although it complained that allowing Graham to testify would give the claimants a "time advantage" because the parties had an equal amount of argument time. It argued that testimony from the other witnesses (including the claimants) was irrelevant or unnecessary because the information the witnesses might provide was available in the

Board's "system" or because SEARHC was willing to stipulate to certain facts, such as the difficulties injured workers face in finding attorneys to represent them, "particularly in the Juneau venue and the Fairbanks venue." SEARHC took the position that what it called "enhanced fees" were only allowed "based upon an attorney's experience in the field of workers' compensation." Graham argued that all factors in the Alaska Rules of Professional Conduct[3] as well as workers' compensation law were relevant to the reasonableness of the requested fees, making the attorney witnesses' testimony directly relevant. He contended that the claimants should be allowed to testify because factors relevant to an attorney's fees award included "issues relating to the client."

The Board permitted both claimants to testify, but decided none of the attorneys, including Graham, could do so. The Board said that "case law" (which it did not identify) directed the Board to consider only experience in workers' compensation law when evaluating an attorney's fees request. The Board decided Graham had "been afforded the opportunity to provide information in his brief" and declined to "provid[e] extra time for testimony." The Board decided the testimony of other witnesses was either irrelevant, repetitious, or both. The Board told the parties it would gather information from its system about the hourly rates received by workers' compensation attorneys and Graham's experience in workers' compensation cases to use in deciding the case.

Graham asked the Board to clarify how he could present evidence about his experience because "[a]rgument is not evidence." He pointed out that the only evidence in the record was his fee affidavit, which did not contain information about his experience. The hearing officer said it was "difficult to distinguish between a legal

---

[3]     These factors are virtually identical to those we set out in *Wise Mechanical Contractors v. Bignell*. *See* 718 P.2d 971, 974 n.7 (Alaska 1986) (listing factors from Alaska Code of Prof. Resp. DR 2-106(B)).

argument and testimony" from Graham and indicated the Board had "the record of ICERS,"[4] which she characterized as "our workers' compensation system." She saw no need to provide Graham with a copy or a printout of the information the Board would use because decisions and orders were "in the public sphere"; she told Graham that he could ask for reconsideration of the Board's decision if "there's something that's incorrect or misstated or something that [he] felt wasn't considered that should have been." Graham offered to submit a declaration he had prepared that summarized his experience and discussed the contingent nature of both personal injury and workers' compensation proceedings. SEARHC did not object, although it was concerned that it would not "have means of questioning or challenging it." The declaration was admitted as evidence.

The declaration briefly outlined Graham's experience, showing he had more than 35 years experience practicing law in multiple states. Most of his work was in "representing personal injury and workers' compensation claimants on a contingent fee basis," and he estimated he had "formally represented hundreds of personal injury clients and dozens of worker[s'] compensation clients," including about 12 in Alaska. But he estimated he had "personally reviewed the status and the legal and factual issues of more than 500 Alaska workers' compensation claimants" in over 20 years of practicing in Alaska; had provided to many claimants "a number of hours" of time, mostly pro bono; and had "been very selective in entering [an] appearance" in workers' compensation cases, in part due to "the difficulties presented for earning a fee." Graham elaborated in his argument to the Board — which we treat as a proffer of the testimony

---

[4] ICERS, which stands for Incident and Claims Expense Reporting System, is a case management system. Minutes, Alaska Workers' Comp. Bd., Workers' Compensation Board Meeting Minutes at 2 (May 15-16, 2014), http://labor.alaska.gov/wc/forms/2014-05-15-Board_Meeting_Minutes.pdf.

he would have provided about his experience had he been permitted to testify — asserting that he had also practiced in "federal jurisdictions" and had "handled workers' compensation cases in Colorado, in New Mexico, and . . . in the federal system, in . . . Federal Longshore[] & Harbor Workers' Compensation Act cases."  He said he had primarily represented personal injury claimants and drew parallels between the skills needed in personal injury and workers' compensation cases.

Both Dockter and Rusch testified about the difficulties they encountered while representing themselves, expressed satisfaction with Graham's representation and the settlement of their cases, and recounted some of the work Graham did for them.  The Board first heard argument in Rusch's case, with the primary points of contention being the complexity of the case[5] and the issues Rusch prevailed on.  The parties' arguments in Dockter's case centered on the extent to which Dockter obtained any benefit from her attorney's efforts, with SEARHC taking the position that she had gotten no real gain from the settlement.  SEARHC expressed concern about Graham's billing methods, including his use of quarter-hour time increments.

Graham had anticipated testifying at the hearing about the time he spent following the initial fee affidavit, as the Board's regulation provides,[6] but Hennemann told the hearing officer that "under the rules" Graham's "updated fee affidavits [were] due . . . at the hearing," and the hearing chair apparently agreed.  No one identified the source of this "rule."  The Board left the record open so that Graham could submit a

---

[5]     AS 23.30.145(a) provides that the Board should consider "the nature, length, and complexity of the services performed" when awarding attorney's fees. Under 8 Alaska Administrative Code (AAC) 45.180(d) (2011), the Board must consider these same factors when awarding reasonable fees under AS 23.30.145(b).

[6]     8 AAC 45.180(b) (allowing an attorney to "supplement the [initial fee] affidavit by testifying about the hours expended and the extent and character of the work performed after the affidavit was filed").

supplemental fee affidavit for the time related to the hearing and SEARHC could submit detailed objections to Graham's affidavits of fees because SEARHC had not had the opportunity to review the affidavits before filing its hearing briefs owing to deadlines set at the prehearing conference. The Board allowed the claimants to file seven-page responses to the objections, making the responses due by November 11.

SEARHC filed lengthy objections in both cases — a 21-page list of objections with 23 exhibits and an affidavit in Dockter's case and a 31-page list of objections with 32 exhibits and an affidavit in Rusch's case — and asked the Board to reduce both the hourly fee requested and the total hours. The claimants filed responses on November 14, the first business day following Veteran's Day, a state holiday. SEARHC objected that the responses were filed late and should be stricken. The Board rejected this argument.

The Board decided that Graham would be awarded an hourly rate of $300 an hour in both cases based on the Board's evaluation of the information it had gathered about the workers' compensation cases in which Graham had entered an appearance. The Board used information from ICERS, Westlaw, and the "Division's Legal Database" to compile a table that listed select attorneys, their years of workers' compensation experience, the number of clients each had represented, and the hourly rates they had been awarded. The Board reduced the number of hours Graham billed in both cases in part because of his "billing methods," such as billing in quarter-hour increments and using block billing.[7] The Board also reduced the hours billed because in its view Graham had spent too much time on some tasks; it additionally reduced his hourly rate based on the Board's assessment of his inexperience. The Board faulted Graham for

---

[7] Block billing consists of "billing entries that do not specify the time taken for each listed task but only give a total." *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 563 (Alaska 2014).

failing to explain some entries, such as why he had traveled to Klawock to consult in person with Rusch, what issue he discussed with her in a phone call, and which medical records he reviewed on certain dates.

The Board disallowed time for certain tasks because in its view the claimants were not successful on claims related to those tasks. The Board did not articulate the basis for its decisions about which issues the claimants prevailed on in their settlements. The Board did not allow any time in either claim for the mediation brief on attorney's fees because the Board deemed the document "unnecessary."

The Board decided that some tasks Graham had billed were actually paralegal tasks, even though Graham argued in written materials that he had been unable to find a part-time paralegal and did not employ one. The Board awarded Graham $130 an hour for these tasks. Ultimately the Board reduced Graham's hours in Rusch's case from 292.05 to 131.30 at the rate of $300, for a total attorney's fees award of $39,390. The Board awarded an additional .95 hour at a paralegal rate of $130 an hour. In Dockter's case, the Board allowed 114.85 hours of attorney time — reduced from 194.5 hours — at $300 an hour and 2.45 hours of time as a paralegal cost at $130 an hour. The Board indicated it was awarding fees under AS 23.30.145(b) in both cases, although it also discussed subsection (a) in Rusch's case.[8]

The claimants appealed to the Commission. After a joint oral argument, the Commission affirmed both Board decisions in separate decisions. The Commission declined to consider whether the Board had violated the claimants' due process rights by

---

[8] Alaska Statute 23.30.145 authorizes attorney's fees to claimants' counsel in workers' compensation proceedings. Under AS 23.30.145(a), the Board may order an employer to pay attorney's fees on the "compensation controverted and awarded." The Board is to award attorney's fees under AS 23.30.145(b) when an employer resists payment of compensation or other benefits and "the claimant has employed an attorney in the successful prosecution of the claim."

prohibiting them from calling witnesses because that issue was beyond its jurisdiction. The Commission decided the presumption of compensability did not apply to the question whether requested fees were reasonable and also determined the Board had not abused its discretion by not allowing the claimants to call the attorney witnesses. According to the Commission, "the testimony of the proposed witnesses would not have provided the Board with any information not already within its knowledge."

The Commission's legal discussion on the merits of the fees awarded in both cases focused on AS 23.30.145(a); it decided the amount of fees awarded was not manifestly unreasonable. The Commission did not address the claimants' arguments that because they settled their claims, the Board could not determine the issues they prevailed on and that whatever factual findings the Board made about issues they lost were not supported by substantial evidence. The Commission decided that substantial evidence in the record supported the Board's findings, writing that "[t]here is no area of the Act in which the Board has had more opportunity to investigate and decide an issue of fact than that concerning attorney['s] fees." In the Commission's view, the Board properly decided Graham's requested hourly rate was "not justified" when compared to "more experienced attorneys," and it belittled his work in both cases. The Commission did nothing to disturb the Board's decisions, affirming the decisions related to Graham's billing methods. The claimants appeal.

III. STANDARD OF REVIEW

"In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision."[9] "Whether the Commission correctly applied the law in determining an award of attorney's fees is a question of law

---

[9] *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1202 (Alaska 2018).

that we review de novo."[10]  "We . . . apply our independent judgment to questions of constitutional law."[11]  "We independently review the Commission's conclusion that substantial evidence in the record supports the Board's factual findings by independently reviewing the record and the Board's findings."[12]  We also review the Commission's legal conclusions about the Board's exercise of discretion by "independently assess[ing] the Board's rulings."[13]  The Board's "award of attorney's fees should be upheld unless it is 'manifestly unreasonable.' "[14]

## IV.   DISCUSSION

We recently discussed the trade-off that underlies the workers' compensation system — "the grand bargain" — in which employees relinquish the right to sue for tort damages in exchange for limited but certain benefits and employers pay limited benefits without regard to fault.[15]  One of the benefits retained by injured workers is the employer's payment of a worker's attorney's fees when the employer controverts or otherwise resists timely payment of compensation to which the worker is entitled.[16]  Because the Alaska Workers' Compensation Act restricts the type of fee arrangement

---

[10]     *D&D Servs. v. Cavitt*, 444 P.3d 165, 168 (Alaska 2019) (quoting *Lewis-Walunga v. Municipality of Anchorage*, 249 P.3d 1063, 1066 (Alaska 2011)).

[11]     *Burke*, 420 P.3d at 1202.

[12]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[13]     *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[14]     *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002) (quoting *Bouse v. Fireman's Fund Ins. Co.*, 932 P.2d 222, 241 (Alaska 1997)).

[15]     *Burke*, 420 P.3d at 1202.

[16]     AS 23.30.145(a)-(b).

between claimants and their attorneys,[17] we have consistently construed the attorney's fees provisions of the Act as requiring fees awards to be adequate to ensure that competent counsel are available to represent injured workers.[18] We have rejected attempts to tie the hourly fees paid claimants' counsel to the hourly fees for defense counsel.[19] We have also weighed in some cases claimants' attorneys having received only partial fees "that may be dramatically lower than if the attorneys were compensated on an hourly basis" to justify higher fees for them than for defense counsel.[20] We have observed that the objective of ensuring that competent counsel are available to represent injured workers "would not be furthered by a system in which claimants' counsel could receive nothing more than an hourly fee when they win while receiving nothing at all when they lose."[21]

We have also recognized the importance to claimants of adequate representation, noting that "[w]ithout counsel, a litigant's chance of success on a workers' compensation claim may be decreased."[22] In the cases at bar the Commission

---

[17]     *See State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 323 (Alaska 2014) (summarizing statutory restrictions on claimants' fee arrangements).

[18]     *See, e.g.*, *State, Dep't of Revenue v. Cowgill*, 115 P.3d 522, 524-25 (Alaska 2005).

[19]     *Id.* at 524-25.

[20]     *Id.* at 525.

[21]     *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 975 (Alaska 1986).

[22]     *Bustamante v. Alaska Workers' Comp. Bd.*, 59 P.3d 270, 274 (Alaska 2002); *see also Haile v. Pan Am. World Airways, Inc.*, 505 P.2d 838, 844 (Alaska 1973) (Erwin, J., dissenting in part, concurring in part) (observing that "in a large number of claims, no counsel represents the claimant" and expressing concern "that the uneven position" of unrepresented claimants "may work to circumvent the purposes of the (continued...)

itself acknowledged the importance of representation, writing in both decisions that the Board "is well aware of the fact that represented claimants frequently are more successful than unrepresented claimants before the Board, primarily because attorneys are skilled in collecting and presenting the kind of evidence necessary to succeed in a workers' compensation case." As we explain in more detail below, the decisions on appeal to us contain multiple errors and awarded an amount of attorney's fees to both claimants that was manifestly unreasonable.

## A.    The Framework For Board-Awarded Attorney's Fees

Alaska Statute 23.30.145(a) and (b) authorize the Board to award attorney's fees to an injured worker. We have observed that the subsections, while "construed separately, . . . are not mutually exclusive."[23] "[I]n a controverted case, the claimant is entitled to a percentage fee under subsection (a) but may seek reasonable fees under subsection (b)."[24] SEARHC controverted benefits in both cases, but it did not controvert all requested benefits in Dockter's case, as it did in Rusch's.

The claimants in both cases sought fees under Alaska Statute 23.30.145(b), which requires the Board to award a claimant "the costs in the proceedings, including reasonable attorney['s] fees . . . in addition to the compensation or medical and related benefits ordered" when an employer resists payment of compensation. SEARHC's Board hearing briefs cited AS 23.30.145(a), which has a provision about minimum fee

---

[22]    (...continued)
compensation act").

[23]    *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 952 n.76 (Alaska 2006) (internal citation omitted).

[24]    *Id.*

awards;[25] SEARHC also discussed awards of reasonable fees in addition to the minimum fees.

The Board and the Commission cited different statutory subsections in their analyses, but neither party raised this as an issue before us.  The Board's regulations employ the same standards to fees requested under AS 23.30.145(b) and requests for fees in excess of the statutory minimum under AS 23.30.145(a).[26]

We have consistently construed AS 23.30.145 "in its entirety as reflecting the legislature's intent that attorneys in compensation proceedings should be reasonably compensated for services rendered to a compensation claimant."[27]  Given our recognition that reasonable fees can be awarded in addition to statutory minimum fees under subsection (a), we see no reason to distinguish between the subsections in setting out the factors the Board needs to consider in awarding reasonable attorney's fees.

---

[25] AS 23.30.145(a) provides in part that "the fees may not be less than 25 percent on the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 percent of all sums in excess of $1,000 of compensation."  The Board said Rusch was entitled to attorney's fees under AS 23.30.145(a), but concluded by saying her attorney would "be awarded . . . fees under AS 23.30.145(b)."  It used AS 23.30.145(b) consistently in Dockter's case.

[26] 8 AAC 45.180(b), (d); *cf. Lewis-Walunga v. Municipality of Anchorage*, AWCAC Dec. No. 123 at 8-9 (Dec. 28, 2009), http://labor.state.ak.us/WCcomm/memos-finals/D_123.pdf (noting similarity in Board's affidavit requirements for attorney's fees under AS 23.30.145(a) and (b)).

[27] *Rose v. Alaskan Vill., Inc.*, 412 P.2d 503, 509 (Alaska 1966); *accord State, Dep't of Revenue v. Cowgill*, 115 P.3d 522, 524-25 (Alaska 2005); *Bailey v. Litwin Corp.*, 780 P.2d 1007, 1011 (Alaska 1989); *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986); *Whaley v. Alaska Workers' Comp. Bd.*, 648 P.2d 955, 959 (Alaska 1982) ("AS 23.30.145 is unique in its generosity to claimants and their counsel.").

When setting the reasonable attorney's fees in these cases, the Board made findings related to two distinct questions: an hourly rate for Graham's services and the number of hours it determined were reasonable for specific tasks. The amount of reasonable fees was the product of multiplying these numbers. The method used here is not the same method the Board used in cases we have reviewed in the past. For example, in *Circle De Lumber Co. v. Humphrey*, the Board increased the statutory minimum fees by a percentage, awarding the claimant "attorney's fees of thirty-five percent of the award."[28] On the other hand, in *Bailey v. Litwin Corp.* the Board first calculated a reasonable fee and then adjusted that fee using several factors.[29] The Board's regulation sets out factors the Board must consider in awarding fees but does not say how those factors are to be applied to a request for fees.[30] Neither party discussed whether the method used here is a standard method the Board currently uses to determine fees, nor did either party dispute that this was an appropriate method, so we do not discuss the issue further. We now turn to the issues presented on appeal.

## B. The Commission Erred In Affirming The Board's Analysis About The Issues On Which The Claimants Prevailed.

Attorney's fees in workers' compensation cases are awarded to successful claimants,[31] and the parties here disputed which issues the claimants prevailed on. In

---

[28] 130 P.3d at 953.

[29] 780 P.2d at 1011-12. The method used in *Bailey* is similar to the "modified lodestar" approach we recently adopted for Unfair Trade Practices and Consumer Protection Act cases. *See Adkins v. Collens*, 444 P.3d 187, 200 (Alaska 2019).

[30] 8 AAC 45.180(b), (d).

[31] AS 23.30.145(a) permits an award of fees on benefits that are controverted and awarded. We have interpreted AS 23.30.145(b) as requiring success on a claim, not solely on collateral issues. *Adamson v. Univ. of Alaska*, 819 P.2d 886, 895 (Alaska

both cases SEARHC argued that the claimants were not successful on certain claims and issues and thus should not be awarded attorney's fees for related work. The Board found that Dockter "prevailed on the primary dispute," the partial knee replacement, but said Dockter had not succeeded on a compensation rate adjustment claim. It did not otherwise discuss her success, even though her written claim sought other relief. The Board decided Rusch was entitled to fees "for services provided on medical benefits, TTD and reemployment benefits" but that she did not prevail on the following issues: "interference with selection of physician, improper influence of physician's medical opinion, unemployment benefits, excessive change of physician, and the ethics of attorney fee negotiation in mediation." It did not offer a rationale for its decisions about success, nor did it explore how the non-monetary issues might have impacted Rusch's success on her monetary claims.

The claimants argue on appeal that because their cases ended in settlements, they should be awarded attorney's fees for all of their claims unless the issue bargained away "lacked merit or was without legal or factual basis." They rely on *Singh v. State Farm Mutual Automobile Insurance Co.*, where we adopted from federal law a test to determine prevailing party status in civil rights litigation in state court.[32] SEARHC's response is that the claimants did not articulate a standard for "awarding fees in a settlement context."

We have not been faced with the question how to determine a workers' compensation claimant's success for purposes of awarding attorney's fees when other claims were settled. In a contested case, the Board resolves more than just monetary

---

[31]     (...continued)
1991).

[32]     860 P.2d 1193, 1198 (Alaska 1993).

-20-                                    **7422**

claims; it may decide procedural or evidentiary issues that can impact the ultimate outcome of the claim. For example, if the Board finds that a party changed physicians too many times, the Board cannot consider the opinions of those doctors.[33] The Board can also sanction a party for disobeying its discovery orders.[34] Excessive changes of physician and discovery disputes were at issue here, and while the cases settled before the issues were fully developed and decided, the Board decreased some of Graham's fees for work on these issues. Rusch additionally alleged that the insurer made multiple misrepresentations and engaged in unfair claim settlement practices as well as interfering with her medical care; these allegations were connected to her claim for unfair or frivolous controversion. Rusch acknowledged in her mediation brief that these were not "claim[s], per se" with an easily identified value, but she argued that were she to prevail on these issues, her chances of success on her monetary claims would "substantially increase."

We agree with the claimants that the Board should use an analysis similar to the one we adopted in *Singh* to evaluate a claimant's success on an issue in a workers' compensation settlement. *Singh*, like this case, involved a fee-shifting statute that allowed reasonable attorney's fees to be awarded to a prevailing party, and like this case, the underlying litigation was resolved through a settlement.[35] The parties disputed whether the plaintiff had prevailed in the underlying suit, with the defendants implicitly contending that "a settling litigant should not become eligible for . . . attorney's fees by

---

[33]    8 AAC 45.082(c) (2019).

[34]    AS 23.30.108(c).

[35]    *Singh*, 860 P.2d at 1197.

merely reciting an otherwise frivolous . . . civil rights claim in his complaint."[36] To resolve this issue, we adopted a test from the Fifth Circuit that "places the burden on the party opposing attorney's fees to show lack of merit."[37]

Before the Board SEARHC discounted the claimants' success and the connection between their attorney's efforts and the settlement amounts. Because workers' compensation attorney's fees awards are in some ways analogous to other fee-shifting statutory schemes, we adopt the test from *Singh* for purposes of evaluating whether a claimant was successful in a settlement.[38] Thus, in a workers' compensation settlement where the parties dispute the issues on which a claimant prevailed for purposes of attorney's fees, the employer "who contends that [its] conduct was a wholly gratuitous response to a [claim] that lacked colorable merit, must demonstrate the worthlessness of the . . . claim[] and explain why [it] nonetheless voluntarily gave the [claimant] the requested relief."[39]

Here SEARHC asserted that "Dockter fail[ed] in her insistence for preauthorization" of the partial knee replacement and gained no more in TTD than it had offered in 2015. And in Rusch's case SEARHC claimed that the litigation "involved an honest dispute regarding two doctor bills totaling about $500" and that "most of the

---

[36]    *Id.* at 1198.

[37]    *Id.*

[38]    In *Whaley v. Alaska Workers' Compensation Board*, we adopted a test from federal civil rights law when construing former Alaska Appellate Rule 508, requiring a showing that the claimant's position "was frivolous, unreasonable, or brought in bad faith." 648 P.2d 955, 960 & n.8 (Alaska 1982) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

[39]    *Singh*, 860 P.2d at 1198 (quoting *Hennigan v. Ouachita Par. Sch. Bd.*, 749 F.2d 1148, 1153 (5th Cir. 1985)).

issues raised during [Graham's] representation completely lacked a factual basis and did not result in any gain through settlement." On remand SEARHC will have the burden of showing why it settled both claims in excess of $100,000 if they were so lacking in merit.

We emphasize that the underlying, non-monetary issues, such as the ethics issue and what the Board called "unemployment benefits," should be analyzed in the same manner. The Board decided the claimants had not succeeded on what it called "the ethics of attorney fee negotiation in mediation" and disallowed any time on that issue. The Commission said, "Neither the Board nor the settlement agreement addressed this issue, so it was not an issue for which fees could be awarded." SEARHC's mediation brief in Dockter's case indicated that Graham told Hennemann he wanted "to negotiate all of Ms. Dockter's claim but for fees first and when all preliminary issues are addressed, then negotiate the issue of fees" and that she informed him that this procedure was "not acceptable to [her] clients." The attorney's fees dispute was separated from negotiation of other claims, so it is hard to understand the agencies' decisions that the claimants did not succeed on that issue.

Both the Commission and the Board faulted Graham for research related to SEARHC's termination of Rusch's employment,[40] but she argued that her eligibility for TTD, and consequently her potential entitlement to reemployment benefits, was

_____

[40] The Commission wrote that the Board correctly "discounted" the "considerable time" billed for a "wrongful termination" claim. SEARHC's list of objections to Graham's attorney's fee affidavit does not mention any time billed for a wrongful termination claim, nor did the Board mention a wrongful termination claim. SEARHC asserted at the Board hearing that Graham "spent hours and hours and hours of time evaluating a potential wrongful discharge claim," but we have found nothing in the record to substantiate this assertion.

related to the loss of her job[41] (which she alleged was due to her continued lifting restrictions) and her receipt of unemployment. Rusch offered in her amended claim to repay all unemployment benefits she had received so that she could receive TTD.[42] Because reemployment eligibility is tied to the employee's inability to return to her employment at the time of injury,[43] Rusch's termination and the reasons for it were not wholly unrelated to her reemployment claim. SEARHC's stated reasons for terminating Rusch's employment was one basis for her assertion that SEARHC had committed an unfair claim settlement practice; she argued that the misrepresentation affected her TTD and reemployment eligibility. The Board should also consider the discovery issues that it did not have to resolve because of the settlement, such as SEARHC's redaction of documents and its failure to file all medical reports, and the impact of these issues on the amount of fees.

### C. Experience In Alaska Workers' Compensation Is Not The Only Factor Relevant To An Attorney's Hourly Rate.

We turn now to the question of assessing a reasonable fee. A main point of contention in these cases was Graham's hourly rate. He requested $425 an hour and told the Board that it had approved an hourly rate of $350 in other workers' compensation cases he had settled. Graham's proposed rate was based on his 35 years of experience in personal injury and workers' compensation, including brief service

---

[41] A chronology Graham prepared for the mediation, evidently based in part on discovery SEARHC provided, suggests that SEARHC's adjuster was aware of this problem: the chronology shows an email from the adjuster to SEARHC asking why Rusch had been laid off and noting they might "have to pay her TTD."

[42] *See Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1233-37 (Alaska 2003) (affirming Board decision awarding claimant TTD if she repaid unemployment benefits received during time that TTD was contested).

[43] AS 23.30.041(c), (e).

work he had done in cases where he did not enter an appearance, as well as the fees he was able to earn in other litigation in Southeast Alaska. The claimants presented argument and proposed findings to the Board on factors set out in *Wise Mechanical Contractors v. Bignell*;[44] of those factors, the claimants contended that only the nature and length of the professional relationship with the client was not relevant. SEARHC maintained that Graham should be awarded no more than $275 an hour because in its view Graham had "limited experience in Alaska Workers' Compensation matters"; it characterized his requested hourly rate as "truly egregious." At the hearing SEARHC argued that our precedent allowed what it called "enhanced fees" only "based upon an attorney's experience in the field of workers' compensation."

The Board evidently agreed with SEARHC: it refused to permit testimony about Graham's experience as an attorney because of relevance, and it later wrote that Graham's "experience representing claimants in civil litigation and workers' compensation cases in other states has no weight in determining his hourly rate and will not be considered." The Commission affirmed the Board's decision, writing, "The Board measured [the claimants'] attorney's experience and expertise against more experienced attorneys and came to a decision supported by the evidence that the hourly rate sought was not justified." The Commission did not provide any legal reason why Graham's experience in other civil litigation or in other states' workers' compensation cases was not relevant.

On appeal the claimants contend that experience in Alaska workers' compensation law, while relevant, should not be the sole criterion used to establish an attorney's hourly rate because many tasks performed in workers' compensation cases are

---

[44] 718 P.2d 971, 974 n.7 (Alaska 1986) (listing factors from Alaska Code of Prof. Resp. DR 2-106(B)).

"no different from the work done by attorneys in other areas of litigation." They maintain that the Commission acted arbitrarily in endorsing the Board's approach and deprived them of due process. The claimants point out that the Board's approach favors attorneys in the Anchorage area because of the smaller number of claims in other areas of the state. SEARHC argues that the Board's hourly fee award was correct because of the specialized nature of workers' compensation law. While SEARHC frames the issue as one of substantial evidence, it is difficult to square SEARHC's argument that there was a failure of substantial evidence in the face of SEARHC's successful efforts to preclude witnesses who could have provided the very evidence SEARHC complains was missing.

As set out above, the agencies did not cite the same statutory subsection for the fees award, but both applied a reasonable fees analysis rather than discussing statutory minimum fees. The statutory and regulatory factors for awarding fees include "the nature, length, and complexity of the services,"[45] the amount of benefits,[46] and "the benefits resulting from the services."[47] Nothing in the regulation or statute ties an attorney's hourly rate solely to his experience in Alaska workers' compensation law. Neither the Commission nor the Board cited any precedent or agency decisions to justify the exclusive use of experience in Alaska workers' compensation law when determining a reasonable hourly rate. The Commission, like SEARHC, viewed the issue as one of

---

[45] AS 23.30.145(a); 8 AAC 45.180(d)(2) (setting out Board considerations for fees under AS 23.30.145(b)).

[46] *See* AS 23.30.145(a) (allowing attorney's fees on "the amount of compensation controverted and awarded"); 8 AAC 45.180(d)(2) (listing "the amount of benefits involved" as a factor for fees under AS 23.30.145(b)).

[47] AS 23.30.145(a); 8 AAC 45.180(d)(2).

discretion and fact finding, even though the claimants made arguments similar to the ones they have briefed on appeal to us.

We have not in our precedent limited the Board to considering only Alaska workers' compensation experience in attorney's fees awards. To the contrary, in *Bignell*, we set out all the factors in what was then the Alaska Code of Professional Responsibility governing determinations of reasonable attorney's fees.[48] In *State, Department of Revenue v. Cowgill*, we expressly rejected an employer's attempt to tie Board-awarded attorney's fees for claimants to "[t]he hourly rates of the equivalently experienced defense counsel."[49] We also expressly rejected in *Cowgill* the employer's request to "revisit" *Bignell*, and we refused to adopt a rule requiring an "individualized inquiry" about the necessity of "enhanced compensation" in workers' compensation cases.[50]

To clarify our holding in *Bignell*, we hold that the Board must consider all of the factors set out in Alaska Rule of Professional Conduct 1.5(a) when determining a reasonable attorney's fee.[51] Those factors are virtually the same as the ones set out in

---

[48] 718 P.2d at 974 & n.7.

[49] 115 P.3d 522, 524 (Alaska 2005).

[50] *Id.* at 527.

[51] Alaska Rule of Professional Conduct 1.5(a) sets out eight non-exclusive "factors to be considered in determining the reasonableness of a fee," specifically:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

(2) the likelihood, that the acceptance of the particular employment will preclude other employment by the lawyer;

(continued...)

*Bignell*[52] and must guide the Board's analysis of the reasonableness of requested fees. Some factors mirror those set out in the Act, such as the amount involved and the results obtained. On remand, the Board must consider each factor and either make findings related to that factor or explain why that factor is not relevant.

We underscored in *Bignell* the importance of the contingent nature of workers' compensation attorney's fees,[53] yet neither the Board nor the Commission discussed how it applied the contingency factor to these cases. The Board mentioned contingency as a factor in the sentence immediately before it lowered Graham's hourly rate to $300. On remand the Board needs to explain how decreasing Graham's hourly fee is consistent with the contingent nature of workers' compensation attorney's fees, if it again decreases his hourly rate.

---

[51]    (...continued)
(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[52]    *Compare id.*, *with Bignell*, 718 P.2d at 974 n.7 (quoting Alaska Code Prof. Resp. DR2-106(B)).

[53]    *Bignell*, 718 P.2d at 975 (expressly including "the contingent nature of counsel's right to compensation" in factors the Board must use when awarding fees).

The Commission also did not discuss why the Board was justified in considering only those workers' compensation cases in which Graham had entered an appearance rather than the cases in which he advised claimants or helped self-represented litigants navigate the system. The Board measured Graham's Alaska workers' compensation experience based only on information from its databases, which apparently revealed that Graham had entered appearances in 20 Alaska workers' compensation cases. The Board did not discuss the statement in Graham's declaration that he had provided assistance without a formal entry of appearance in numerous other Alaska workers' compensation cases. The agencies' failure to consider this evidence was erroneous, particularly in light of their narrow focus on an attorney's experience in this area of law.

We recognize that Alaska workers' compensation law is a specialized field, and we do not mean that experience in that field cannot be taken into account. But an attorney's experience in related legal fields, such as administrative law, occupational disability law, or personal injury law, should be relevant as well. Here, for example, Graham's experience as a trial attorney appears to have given him an understanding of what constitutes evidence. And we see no reason that experience in other states' or federal workers' compensation law would not be relevant to an attorney's reasonable hourly rate.[54] The Board's regulation expressly authorizes awards of attorney's fees to

---

[54]  We have relied on cases decided under the federal Longshore and Harbor Workers' Compensation Act in the past because our Act was "modeled" on it. *McCarter v. Alaska Nat'l Ins. Co.*, 883 P.2d 986, 990 n.5 (Alaska 1994); *see, e.g.*, *Fischback & Moore of Alaska, Inc. v. Lynn*, 453 P.2d 478, 483-84 (Alaska 1969) (deciding that federal case law was "dispositive" of legal issue because of substantial similarity between federal statute and Alaska Act).

attorneys licensed in other states.[55] It is hard to see why these attorneys' experience practicing workers' compensation in their own states could not be considered in determining their reasonable fees in an Alaska case. Finally, there is a general body of workers' compensation law. General principles of workers' compensation law are set out in Larson's Workers' Compensation Law,[56] a treatise cited by us,[57] by the workers' compensation agencies,[58] and by workers' compensation attorneys.[59] It was therefore legal error to discount completely Graham's experience in workers' compensation in the federal system and in other states.

**D. The Board Denied The Claimants Due Process.**

The claimants argue that the Board violated their due process rights by not allowing them to call witnesses and by using "the Board's proprietary data" without giving them an opportunity to address this information. They point out that the Board reduced Graham's hours because he did not explain some entries, yet he was unable to explain those entries (or answer other questions the Board or SEARHC might have had) because the Board disallowed his testimony. SEARHC responds that the Board did not

---

[55] 8 AAC 45.180(b), (d).

[56] ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW (rev. ed. 2015).

[57] *See, e.g.*, *Anderson v. Tuboscope Vetco, Inc.*, 9 P.3d 1013, 1017 (Alaska 2000) (adopting three-part test for special employment from Larson's treatise).

[58] *See, e.g.*, *Warnke-Green v. Pro West Contractors, LLC*, AWCAC Dec. No. 235 at 12 (June 26, 2017), http://labor.state.ak.us/WCcomm/memos-finals/D_235.pdf; *Kolb v. Walmart Assocs., Inc.*, AWCB Dec. No. 16-0099 at 11 (Oct. 28, 2016), http://appeals.dol.alaska.gov/docs/workerscomp/2016/16-0099.pdf.

[59] *See, e.g.*, *Unisea, Inc. v. Morales de Lopez*, 435 P.3d 961, 971, 973 (Alaska 2019) (summarizing employer's argument based on Larson's treatise).

violate due process, viewing the exclusion of the witnesses' testimony as a proper exercise of the Board's discretion. The Commission did not reach this issue because of limits on its jurisdiction.[60]

"Due process requires the 'opportunity to be heard at a meaningful time and in a meaningful manner.' "[61] Procedural due process applies in administrative proceedings, including workers' compensation hearings.[62] "We have concluded that a party's due process rights are violated when the record is supplemented with a new rationale to which the party was not able to respond."[63] We have also decided that an administrative agency violated a party's due process rights by not allowing her the opportunity to rebut evidence produced after a hearing when the final decision in the case rested both on that evidence and on a new legal issue that had not been previously raised.[64]

Here the Board did not allow Graham to testify but then reduced hours for certain tasks because he either did not explain why the tasks were necessary or had not provided a level of detail in his affidavit that the Board later deemed necessary. The

---

[60]     *See Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 36 (Alaska 2007) ("Administrative agencies do not have jurisdiction to decide issues of constitutional law." (citing *Dougan v. Aurora Elec., Inc.*, 50 P.3d 789, 795 n.27 (Alaska 2002))).

[61]     *Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[62]     *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1132 (Alaska 2008).

[63]     *Heustess v. Kelley-Heustess*, 259 P.3d 462, 477 (Alaska 2011) (citing *Matson*, 785 P.2d at 1206).

[64]     *Bostic v. State, Dep't of Revenue, Child Support Enf't Div.*, 968 P.2d 564, 569-70 (Alaska 1998).

Board's regulations require "an affidavit itemizing the hours expended as well as the extent and character of the work performed."[65] The regulation provides no additional guidance about the form of an affidavit.[66] The Board did not inform Graham that his affidavit was inadequate at the hearing, even though SEARHC commented in its hearing brief that it "anticipated" Graham would use quarter-hour billing "rather than the customary tenth of an hour billing," nor did the Board allow him an opportunity to modify the affidavit before issuing its decision. We agree with the claimants that the Board's actions here violate due process by reducing their attorney's fees without either providing adequate notice about the information they needed to present to preserve their claims or allowing them to present evidence to address the reasons for lowering their fees.

Turning to the use of the Board's database, the Board consulted ICERS to gather evidence related to Graham's experience — evidently after the hearing because the Board chair said the information was "not available right now" when Graham asked at the hearing to see the evidence so that he could argue about it. The Board chair told him he could ask for reconsideration of its decision if he thought something was incorrect in or improperly excluded from its decision. When discussing the related question of abuse of discretion in not allowing the attorney testimony, the Commission thought the Board had "within its database sufficient information" to establish reasonable attorney's fees without hearing from the attorney witnesses, including Graham.

---

[65]     8 AAC 45.180(d)(1).

[66]     It does not, for example, require the use of a specific time increment in billing, nor does it forbid block billing. 8 AAC 45.180. As an example of the level of detail the Board demanded, it reduced Graham's hours because he did not "state which issue the medical records and research addressed" when he claimed hours spent reviewing medical records and researching them. It also faulted him for not "provid[ing] the issue or benefit addressed" in phone calls to his clients.

We conclude that the Board's use of the extra-record information without providing the claimants an opportunity to see and respond to it before the Board made its decision violated due process. The Board's past decisions may have information about the hourly fees awarded to attorneys, but the Board has no regulation tying a certain number of clients or years of practice to a specific hourly fee — in short, it has no regulation explaining how experience in workers' compensation is measured and how that experience is used to arrive at a reasonable hourly fee.

Graham submitted a declaration, which the Board admitted as evidence, estimating that he had "reviewed the status and the legal and factual issues of more than 500 Alaska workers' compensation claimants over the last 20 years"; the declaration also provided an estimate of the number of cases in which he had either entered an appearance or participated in a hearing. The Board did not allow Graham the opportunity to argue how his experience was similar to or different from that of attorneys listed in the Board's table, which showed rates it had approved for certain attorneys in the past, because the Board created the table after the hearing. The Board used extra-record judicial facts to make an individualized decision without providing the claimants an opportunity to confront the evidence, dispute its accuracy, or argue about it. This violated their rights to due process.

The Board and the Commission justified the use of ICERS and the lack of notice to the claimants by citing our decision in *Fairbanks North Star Borough v. Rogers & Babler*, where, in summarizing how we review questions of fact on appeal, we stated, "The Board may base its decision not only on direct testimony, medical findings, and other tangible evidence, but also on the Board's experience, judgment, observations,

unique or peculiar facts of the case, and inferences drawn from all of the above."[67] *Rogers & Babler* cannot be read as broadly as the agencies did here, and it does not, as SEARHC contends, allow the Board to use "institutional experience" derived from its database as evidence to decide disputed facts without giving parties an opportunity to rebut that evidence. The point of our statement, derived from *Beauchamp v. Employers Liability Assurance Corp.*, was that administrative adjudicators' expertise gained from repeated exposure to information in adjudications can support conclusions made from the evidence presented in a specific case.[68]

In sum, the Board violated the claimants' due process rights by using information from its database without providing an opportunity to rebut that information and by reducing hours without adequate prior notice that the affidavits did not meet an unwritten standard. It also violated due process by failing to provide adequate notice about what information the Board would use to evaluate their fee requests and by not providing them an opportunity to present evidence to support the reasonableness of the requested fees.

**E.    The Board Abused Its Discretion By Not Allowing Testimony From The Other Witnesses.**

The claimants contend that they had a statutory right to call witnesses at the hearing and that the Board abused its discretion when it excluded all of the attorney

---

[67]    747 P.2d 528, 533-34 (Alaska 1987) (citing *Wilson v. Erickson*, 477 P.2d 998, 1001 (Alaska 1970); *Beauchamp v. Emp'rs Liab. Assurance Corp.*, 477 P.2d 993, 996 (Alaska 1970)).

[68]    *See Beauchamp*, 477 P.2d at 996 & n.8 (quoting 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 79.50, at 299 (1970)) (discussing extent to which expert medical testimony is necessary in compensation cases); *see also* 2 KRISTIN E. HICKMAN & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 9.6, at 1052-53 (6th ed. 2019) (discussing adjudicators' use of their own knowledge to assess evidence).

witnesses. SEARHC responds that the Board properly evaluated the proposed testimony and correctly decided it was not relevant.

The claimants sought to call Graham and three other attorneys as witnesses. One Juneau attorney would have testified about the reasons "he declines to accept Alaska compensation cases" and Graham's "legal abilities and experience." Another attorney would also have testified about "Graham's experience and abilities" as well as his "ability to earn large fees handling personal injury cases." Finally, an Anchorage attorney would have testified about the "hourly rates received by experienced Alaska compensation attorneys," among other things. Graham evidently intended to supplement his fee affidavit through testimony, as a Board regulation allows.[69] The Board decided that the proposed testimony was either irrelevant, repetitious, or both. The Commission decided that the Board had not abused its discretion.[70]

The Board's failure to allow Graham to testify is troubling in light of the express regulatory provision that authorizes attorney testimony at a hearing to supplement fee affidavits. SEARHC's assertion that "under the rules" the claimants were required to file "updated fee affidavits" at the hearing is perplexing given the regulatory

---

[69]     8 AAC 45.180(b).

[70]     The Commission erroneously evaluated this issue as the application of a Board regulation and incorrectly stated that AS 44.62.460 does not apply to Board hearings because of a Board regulation. The Alaska Administrative Procedure Act applies to Board proceedings "where procedures are not otherwise expressly provided by the Alaska Workers' Compensation Act." AS 44.62.330(a)(12). While the Board has the power to promulgate regulations interpreting the Act, AS 23.30.005, a regulation is not a statute and cannot overrule one. We have applied AS 44.62.460 to workers' compensation proceedings in the past. *See, e.g.*, *DeNuptiis v. Unocal Corp.*, 63 P.3d 272, 277-78 (Alaska 2003) (applying AS 44.62.460(e) and concluding that the standard of proof was preponderance of the evidence); *Emp'rs Commercial Union Ins. Grp. v. Schoen*, 519 P.2d 819, 823-24 (Alaska 1974) (applying AS 44.62.460(b)).

language.  Moreover, SEARHC said it could not object to Graham "testifying about his fee affidavit."  The Board's exclusion of Graham's testimony was an abuse of discretion.

Although we have explained that the Board and Commission misunderstood our precedent and improperly narrowed the inquiry related to reasonable fees, the Board's blanket exclusion of all testimony from the attorney witnesses was improper even if the Board had been right about the relevant factors.  Two of the attorneys would have provided testimony about Graham's experience; while the Board was interested only in workers' compensation experience, the record does not show that the witnesses had no knowledge of this issue.  Likewise, the Anchorage attorney would have testified about the very information the Board derived from its database — the hourly rates received by workers' compensation attorneys.  The Board also said some testimony would be unduly repetitious, but testimony is not repetitious if no testimony has been allowed.

We do not mean to imply that administrative adjudicators have no discretion to control hearings and limit witnesses to relevant testimony: AS 44.62.460(d) expressly permits exclusion of "[i]rrelevant and unduly repetitious evidence."  But the Board prevented the witnesses from testifying at all — it did not sustain objections to specific questions eliciting irrelevant information — even though the proposed testimony was relevant.  The Commission's comment that "the testimony of the proposed witnesses would not have provided the Board with any information not already within its knowledge" is simply not accurate.  At the time the claimants sought to call the witnesses, the Board panel did not have the information the witnesses might have supplied — the Board presumably had to look up the information after the hearing since it was unable to provide the claimants with it when they asked at the hearing.  The Commission's conclusion that the Board did not abuse its discretion in excluding the attorney witnesses' testimony was incorrect, and we reverse that decision.

**F. The Commission Correctly Concluded That The Presumption Of Compensability Does Not Apply To The Amount Of Fees.**

The claimants argue that the presumption of compensability should apply to attorney's fees because we have held that a claimant is entitled to the presumption of compensability on evidentiary issues involved in the determination of compensability.[71] In response SEARHC relies on an unpublished decision in which we decided that the presumption of compensability did not apply to a request for attorney's fees.[72] We said there that the Board was "to determine the reasonableness of each request for fees" and concluded that attorney's fees "are subject to the broad discretion of the Board and will be upheld unless manifestly unreasonable."[73] SEARHC also points out that the reasonableness of fees involves discretion.

We agree with the Commission that the presumption of compensability does not apply to the amount of fees and their reasonableness, but our reasoning differs from the Commission's. We have held that the presumption does not apply to all contested issues in a workers' compensation claim, with our decisions considering whether application of the presumption furthered statutory goals.[74] In *Rockney v. Boslough Construction Co.* we held that the presumption did not apply to evaluating whether a specific reemployment plan met the relevant statutory requirements because

---

[71] *See Sokolowski v. Best W. Golden Lion Hotel*, 813 P.2d 286, 292 (Alaska 1991) (setting out that claimant "is entitled to presumption of compensability as to each of those questions" involved in determining whether a judicially recognized exception applied).

[72] *Soule v. Mid-Town Car Wash*, No. S-5634, 1994 WL 16459431 (Alaska Aug. 3, 1994).

[73] *Id.* at *1.

[74] *Burke v. Houston NANA, L.L.C.*, 222 P.3d 851, 861 (Alaska 2010); *Rockney v. Boslough Constr. Co.*, 115 P.3d 1240, 1243-44 (Alaska 2005).

the insurer and employer did not dispute the claimant's "entitlement to reemployment benefits or their liability for those benefits."[75] We observed that the claimant was not seeking coverage and reasoned that "applying the presumption to evaluating reemployment plans does not promote the goals of encouraging coverage and prompt benefit payments."[76]

A similar rationale applies here. The parties did not dispute the claimants' entitlement to attorney's fees; they disputed the fees' reasonableness. A determination of reasonableness requires consideration and application of various factors that may involve factual determinations,[77] but the reasonableness of the final award is not in itself a factual finding. The difference is illustrated by what we consider in reviewing these questions. We use the substantial evidence test for review of factual determinations, considering whether the record has adequate evidence to support the factual finding.[78] In contrast when we review the Board's exercise of discretion in an award of attorney's fees, we consider whether the award is manifestly unreasonable.[79]

---

[75] 115 P.3d at 1244.

[76] *Id.*

[77] *See* AS 23.30.145(a) (requiring consideration of "nature, length, and complexity of the services" as well as benefits resulting from attorney's services); 8 AAC 45.180(b), (d).

[78] *Rockney*, 115 P.3d at 1242.

[79] *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002); *see also Reid v. Williams*, 964 P.2d 453, 460 n.17 (Alaska 1998) ("An award of attorney's fees will only be reversed for an abuse of discretion, which exists if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive." (quoting *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 793 (Alaska 1997))).

## G. The Commission Erred In Affirming Use Of A Paralegal Rate.

The Commission affirmed the Board's decision that some of Graham's time should only be paid at a paralegal rate. Neither the Board nor the Commission articulated a standard to distinguish attorney tasks from paralegal tasks. The Board cited only one prior Board decision about paralegal work, which involved an attorney's voluntary reduction in her hourly rate for tasks she considered paralegal tasks.[80]

We agree with the claimants that it was improper to award a paralegal's hourly rate for legal tasks performed by an attorney. The Board's regulations allow awards of attorney's fees only to licensed attorneys[81] and permit paralegal work to be billed as a cost only when the paralegal "is employed by an attorney licensed in this state or another state."[82] In other words, the training of the person doing the work, not the task performed, determines whether the award is for attorney's fees or costs. As the claimants argue, many tasks in a workers' compensation case can be performed by paralegal staff because the Board permits nonattorney representatives at all stages of its proceedings.[83]

Reducing an attorney's hourly fee to a paralegal rate for work the attorney performed discourages rather than encourages representation of injured workers. The Board and Commission should not penalize an attorney who does not employ a paralegal and performs legal tasks that either an attorney or a paralegal can perform. Even when attorneys employ paralegals, attorneys must have discretion to manage their law practices

---

[80] *Baker v. Pro West Contractors L.L.C.*, AWCB Dec. No. 15-0069 at 11, (June 16, 2015), http://appeals.dol.alaska.gov/docs/workerscomp/2015/15-0069.pdf.

[81] 8 AAC 45.180(b), (d); *cf.* AS 23.30.260(b) (permitting attorney licensed in this state to charge a one-time fee of $300 for services when attorney does not enter an appearance).

[82] 8 AAC 45.180(f)(14).

[83] 8 AAC 45.178 (2011).

and select which tasks to delegate to paralegals. An attorney's voluntary decision to charge only a paralegal rate in one claim does not create a legal rule that permits the Board to reduce arbitrarily the fees awarded when an attorney performs tasks that are necessary to the claim but might be within a paralegal's duties in a larger firm.

The Act is to be construed and applied in a manner that encourages, not discourages, attorney representation of injured workers.[84] We agree with the claimants' argument before the Board that awarding only a paralegal rate for work done by an attorney will result in fewer attorneys who will represent claimants. The Commission's decision that paralegal tasks were properly "reduced in value" is contrary to the goal of ensuring that competent counsel are available to represent injured workers and must be reversed.

**H.** **The Commission Erred In Concluding That Substantial Evidence Supported The Board's Findings.**

The parties dispute the Commission's conclusion that substantial evidence in the record supports the Board's findings. These were highly contentious cases, and many of SEARHC's objections to fees were based on assertions of fact, leaving the adjudicators with the difficult task of combing through the records to resolve multiple picayune disputes. Not all of the disputes centered on facts; instead, they involved questions of the reasonableness of the time spent. For example, SEARHC asserted that Graham spent an unreasonable amount of time reviewing discovery even though it acknowledged that it had provided him with discovery at those times. The Commission decided in conclusory fashion that substantial evidence supported the Board's decisions

---

[84]    *See, e.g.*, *Cortay v. Silver Bay Logging*, 787 P.2d 103, 109 (Alaska 1990) ("Awarding fees at half a lawyer's actual rate is inconsistent with the purpose of awarding full attorney's fees in the worker's compensation scheme.").

but only provided analysis on a few issues.[85] Even though we are remanding this case for further proceedings, we address a few factual findings that do not appear to be supported by the record to assist the Board on remand.

In Dockter's case the Commission affirmed the Board's decision that Dockter had not prevailed on the compensation rate adjustment, writing that the settlement "did not provide money for resolving this issue." Yet the settlement agreement describes a dispute over the weekly compensation rate and says that the parties' settlement of TTD "reflects a compromised rate," suggesting that SEARHC did in fact provide some money for the compensation rate adjustment. If that is the case, the Board's decision was not supported by the evidence.

We also question the Commission's conclusion that the Board justifiably eliminated all of Graham's time for work on what he called a mediation brief in the attorney's fees dispute. The Commission thought the document was "unnecessary." The Board said that the brief was prepared "after mediation ended," but it did not account for evidence from both parties suggesting that the parties anticipated working further with the mediator to resolve the attorney's fees dispute. It is unclear why a document prepared to assist a mediator would have been unnecessary, particularly when it appears the mediator shared the document's contents with SEARHC's attorney. After the Board reassesses the claimants' success, it will also need to reassess the hours permitted as reasonable attorney's fees.

---

[85] As we pointed out above, we found nothing to support the Commission's conclusion that the Board reduced Graham's hours for researching wrongful termination in Rusch's case. The Commission made a similar determination in Dockter's case. We are unaware of any dispute about the termination of Dockter's work with SEARHC.

**I.**     **The Commission Erred In Concluding That The Board Properly Exercised Its Discretion In Awarding Fees.**

In both decisions, the Board made a table showing reductions in the claimed attorney time based on Graham's "billing methods," i.e. his use of block billing[86] and quarter-hour time increments. The Board constructed a second table in each case showing reductions for what it considered "unreasonable time spent on relatively simple tasks."[87] The total reduction was not trivial: in Dockter's case the reductions totaled more than 25 hours, and in Rusch's case they exceeded 50 hours.

The Board apparently considered the complexity and novelty of the issues in the cases, but it is not clear how it used these factors in its analysis; it seems to have used these factors to decide that the total number of hours billed was unreasonable, but it did not explicitly cite the factors in reducing any time entry.[88] The Board decided that Rusch's "medical and legal issues were not complex or novel" because "[b]ack injuries are the most common injuries claimed by injured workers." It considered Dockter's legal issues to be "of average complexity."

The Commission affirmed the Board's decisions because in its view the Board acted within its discretion in making these reductions. The Commission agreed that the medical issues were neither complex nor novel, it thought the cases were not

---

[86]     We find it significant that *both* attorneys' billing records here used block billing.

[87]     Because the Board identified time entries in these tables by date and hours claimed, it is not always evident which time entries were reduced or eliminated. The Board reduced to zero some time entries in Rusch's case; it did not explain why those tasks were unnecessary.

[88]     As we mentioned above, neither party raised an issue about the method of calculating fees here; the awarded fees were the product of the hours the Board allowed and the hourly rate the Board awarded.

lengthy, and it concluded that the amount of fees awarded in both claims was not manifestly unreasonable. In Rusch's case the Commission amplified the Board's findings about the lack of complexity, explaining that the lack of a second independent medical evaluation (SIME) or doctors' depositions was "evidence that this was not a complex case." Neither agency mentioned issues of redacted documents or SEARHC's failure to file at least one medical report in Rusch's case, nor did they explore the relationship between reemployment benefits, TTD, and Rusch's layoff.

The claimants argue that the Board abused its discretion when it reduced their attorney's hours because of block billing and his use of quarter-hour increments for time records.[89] SEARHC responds that substantial evidence in the record supports the Board's reductions in hours. It contends that disallowing time for block billing "was perfectly logical and rational" and an appropriate "observation" based on the Board's experience "as an administrative tribunal." It maintains that reducing hours because of Graham's use of quarter-hour time increments was supported by substantial evidence because the Board found "that billing in increments of one-tenth of an hour was customary."

Turning first to the use of a specific time increment, the fact that workers' compensation attorneys generally bill in increments of one-tenth of an hour does not make that custom a rule of law. The Board's regulations do not require use of a specific time increment, and the Board did not tell Graham at the hearing that he needed to use tenths of an hour so that he could modify his affidavit. The reduction in hours solely based on the use of quarter-hour increments was an abuse of discretion.

---

[89] The claimants ask us, without explanation, to increase the fees awarded under AS 23.30.145(c). We have never construed this statutory subsection as allowing us to increase Board-awarded fees; because the claimants provided no argument to support their request, we consider this issue waived.

The reductions solely based on block billing were also an abuse of discretion. The Board's regulation does not prohibit block billing, and prior Board decisions do not have a clear rule about reductions solely for block billing.[90] The Board here said that block billing made it difficult to determine whether the specific tasks were related to issues on which the claimants succeeded, but in some instances the Board reduced the attorney's time when all of the tasks appear to be related to issues on which the claimants prevailed. And in evaluating entries with block billing, the Board at times awarded less time than SEARHC agreed was reasonable without explaining why.

The fact that back injuries are common does not support a finding that a particular case is not complex,[91] nor is the fact that certain benefits are "common" or "routinely addressed" evidence that the legal issues related to those benefits are not complex. And the lack of an SIME or multiple medical depositions is as much evidence that the cases settled early in the litigation process as it is that they were not complex.

By any measure the fees awarded in these cases were unreasonably low. Rusch received in her final settlement far more than SEARHC ever offered before Graham entered an appearance. According to Hennemann's billing records, her firm

---

[90]     *See Lavallee v. Bucher Glass Inc.*, AWCB Dec. No. 16-0055 at 32-33 (July 8, 2016), http://appeals.dol.alaska.gov/docs/workerscomp/2016/16-0055.pdf ("encourag[ing]" employee's attorney to avoid block billing in future but listing multiple factors in adjusting fees); *Mullen v. Municipality of Anchorage*, AWCB Dec. No. 10-0172 at 11 (Oct. 14, 2010) (reducing by three hours attorney time for duplicate billing for conferences after observing that block billing made using estimate necessary). The Board has also approved block billing, writing that a hearing officer can evaluate the reasonableness and necessity of the tasks listed for a day. *McKenna v. ARCO Alaska, Inc.*, AWCB Dec. No. 12-0070 at 60 (Apr. 9, 2012).

[91]     *See, e.g.*, *Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 789-90 (Alaska 2007) (reversing Board's decision not to consider lay testimony in medically complex back-injury case).

billed the employer over $44,500 in legal fees through the end of July for representing it in Rusch's case; the records do not include the hearing or time related to SEARHC's objections to Graham's fee affidavit.  The amount of fees the Board awarded Rusch for work through the time Graham filed his supplemental fee affidavit in October, after the hours-long hearing, was $39,513.50.  In Dockter's case the difference was not as great: Hennemann's firm billed its clients just over $33,700 in legal fees through the end of July, and the Board awarded Dockter $34,773.50 for Graham's work through the filing of his supplemental fee affidavit in October.  But, as with Rusch, Dockter received far more in settlement than SEARHC had previously offered, and she additionally obtained the partial knee replacement surgery she sought.  And because of the procedure the Board used here, the claimants were not able to document and get payment for their attorney's time spent responding to SEARHC's extensive objections to the fee affidavits or its objection to the timeliness of their responses.

We have "noted that employees' attorneys need to earn more than a 'normal hourly fee' on successful cases because they receive nothing on unsuccessful cases."[92] We have consistently instructed that the Act is to be construed and applied to ensure that competent counsel are available to represent claimants.[93]  The fees awarded here do not meet this standard and are manifestly unreasonable.  Neither the Board's nor the Commission's decisions can fairly be characterized as consistent with the goals we have identified, even though the Board cited our precedent and acknowledged the policies underlying them.  Using a legal standard like an incantation, in the hope that the mere recitation of the standard will transform a decision contrary to the standard into one

---

[92]     *State, Dep't of Revenue v. Cowgill*, 115 P.3d 522, 526 (Alaska 2005) (quoting *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 975 (Alaska 1986)).

[93]     *E.g.*, *id.* at 524; *Cortay v. Silver Bay Logging*, 787 P.2d 103, 108 (Alaska 1990); *Bignell*, 718 P.2d at 973.

conforming to it, is not the point of the law. For the law to have meaning, application of standards must be more than an empty exercise. The Commission's decisions here, while reciting the law about the importance of representation, work to discourage rather than encourage representation of claimants and must be reversed.

## V.    CONCLUSION

We AFFIRM the Commission's decision that the presumption of compensability does not apply to the reasonableness of an attorney's requested fees. In all other respects, we REVERSE the Commission's decisions and REMAND the cases to the Commission with instructions to remand to the Board for further proceedings consistent with this opinion.