STATE of Alaska, DEPARTMENT OF REVENUE, Appellant,

v.

Pat M. COWGILL, and Alaska Workers' Compensation, Board, Appellees.

No. S–11337.

Supreme Court of Alaska.

June 24, 2005.

---

---

**523**

Rebecca Hiatt, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellant.

Joseph A. Kalamarides and Rebecca Patterson, Kalamarides & Lambert, Anchorage, for Appellee Pat M. Cowgill.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The State of Alaska appeals from the Alaska Workers' Compensation Board's award of attorney's fees to the claimant, Pat Cowgill. The state argues that the amount of the award was unreasonable, that the board failed to make adequate findings, and that it abused its discretion. The state also requests that we revisit our previous cases dealing with the board's application of the "contingency factor" in awarding fees.

We conclude that the fee award was not manifestly unreasonable, that the board made adequate findings, and that it did not abuse its discretion. We also see no need to revisit our prior holdings in this area.

### II. FACTS AND PROCEEDINGS

Pat Cowgill worked for the State of Alaska. She applied for workers' compensation benefits after developing arm pain she attributed to her workstation. The state opposed awarding her permanent partial impairment (PPI) benefits; Cowgill hired attorney Joseph Kalamarides to represent her. After finding in favor of Cowgill on her PPI claim, the board considered Cowgill's request for an award of attorney's fees based on a rate of $250 per hour. It concluded that $240 per hour was a reasonable rate under AS 23.30.145(b).[1] The state appealed and, following remand from the superior court, the board concluded that the same rate applied under AS 23.30.145(a).[2] The board relied on

---

1. AS 23.30.145(b) provides that a "reasonable attorney fee" may be awarded "[i]f an employer fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it becomes due or otherwise resists the payment of compensation or medical and related benefits."

2. AS 23.30.145(a) addresses "[f]ees for legal services rendered in respect to a claim" and directs that such fees "are not valid unless approved by the board." It also provides that "[i]n determining the amount of fees the board shall take into consideration the nature, length, and complexity

several factors in explaining its reasonableness determination, including the contingent nature of representing workers' compensation claimants. The superior court again reviewed the board's decision and this time held that the board's $240–per–hour award was not manifestly unreasonable. The state appeals.

## III. DISCUSSION

### A. Standard of Review

 "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the board's decision."[3] And "[u]nless statutory interpretation is required, we review an award of attorney's fees by the board under the abuse of discretion standard. The award of attorney's fees should be upheld unless it is 'manifestly unreasonable.' "[4]

### B. The Fee Award Was Not Manifestly Unreasonable.

 The state relies on two contentions in arguing that the board's award was unreasonable. First, according to the state, the rates charged by workers' compensation defense counsel should have served as the starting point for the board when determining Cowgill's fee award because they reflect the "market rate" or "normal rate." Second, the state claims that the board's "enhancement" of this "normal" rate is not justifiable in light of the actual rate of non-payment of claimants' attorneys coupled with the poten-

tial for overpayment. We will discuss each contention in turn.

### 1. Defense counsel rates

Fees payable to an employee's lawyer must be approved by the board.[5] The state therefore argues that "[t]he hourly rates of the equivalently experienced defense counsel are virtually the only normal or 'market' rates available in workers' compensation proceedings." The state presented expert testimony that the highest rates for defense attorneys during the relevant times ranged from $165 to $180 per hour. Because the board awarded Cowgill's attorney $240 per hour, the state suggests that the board must have "augment[ed]" the " 'normal' hourly rate" by at least thirty-three percent.

In *Wise Mechanical Contractors v. Bignell* we observed that the objective in workers' compensation cases "is to make attorney fee awards both *fully compensatory and reasonable* so that competent counsel will be available to furnish legal services to injured workers."[6] The state misreads *Wise* by reasoning that "fully compensatory and reasonable fees" must be equated with placing employees' attorneys on an "even footing" with the employers' attorneys defending the claims. *Wise* discussed the difference between contingency fee arrangements and "various law practice areas where a steady hourly fee is available" and how the "contingency factor" can reduce the disincentive for attorneys to represent claimants.[7] It referred to workers' compensation defense as an example of an hourly fee practice, not as

---

of the services performed, transportation charges, and the benefits resulting from the services to the compensation beneficiaries."

3. *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002).

4. *Id.* (quoting *Bouse v. Fireman's Fund Ins. Co.*, 932 P.2d 222, 241 (Alaska 1997)).

5. AS 23.30.145(a).

6. *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986) (emphasis added). *See also Cortay v. Silver Bay Logging*, 787 P.2d 103, 108–09 (Alaska 1990).

7. We reasoned in *Wise* that

[i]f an attorney who represents claimants makes nothing on his unsuccessful cases and no more than a normal hourly fee in his successful cases, he is in a poor business. He would be better off moving to the defense side of the compensation hearing room where attorneys receive an hourly fee, win or lose, or pursuing any of the other various law practice areas where a steady hourly fee is available. As we have noted, the objective of awarding attorney's fees in compensation cases is to ensure that competent counsel are available to represent injured workers. This objective would not be furthered by a system in which claimants' counsel could receive nothing more than an hourly fee when they win while receiving nothing at all when they lose.

*Wise*, 718 P.2d at 975 (citation omitted).

a "yard stick" for measuring claimants' attorney's fees.[8] Therefore, the state's premise that awards of attorney's fees to employees' lawyers must be comparable to the fees charged by lawyers for employers rests on a flawed interpretation of *Wise*.

We have previously observed an important difference between employees' lawyers and employers' lawyers in workers' compensation practice; namely, that employers' attorneys are paid whether they win or lose, while employees' attorney's fees are, by statute, contingent upon success.[9] Two of the state's own expert witnesses reiterated this distinction. In addition, one expert agreed that employers negotiate contracts with defense firms, whose lawyers know in advance how much they will be paid whether their clients win or lose.[10] There is also competition among potential suppliers of legal services to employers,[11] a situation that has no clear analogy with respect to employees' attorneys. These differences work to drive defense counsel rates downward and militate against using defense rates as a benchmark in awarding fees to employees' attorneys.

### 2. "Negative contingency" evidence

The state argues that the "actual negative contingency"—how often claimants' lawyers receive no compensation—is small. The state's expert witnesses testified that the actual rate of non-payment for claimants' attorneys is six percent or less. The state posits that this testimony indicates that the contingency factor is unnecessary because "the small actual negative contingency" is offset by "positive contingenc[ies]" (the possibility that counsel is overcompensated in some cases).

But we agree with the board's observation that the state's "negative contingency" evidence is incomplete and unpersuasive. Most notably, the testimony only concerned instances in which claimants' attorneys receive no fee at all.[12] The testimony failed to take into account situations in which claimants' attorneys receive partial awards that may be dramatically lower than if the attorneys were compensated on an hourly basis. The "negative contingency" evidence proffered by the state does not provide an adequate picture of claimant counsel compensation and the board did not err in disregarding it.[13]

### 3. "Positive contingency" evidence

The state also argues that the mandatory minimum attorney's fee provision contained in AS 23.30.145(a)[14] can "overshadow" the risks of underpayment presented by contingent representation of workers' compensation claimants. Attorneys could in theory be overcompensated if the time and effort spent do not justify the minimum fee, a possible phenomenon that we have noted in the past.[15] The state argues that the board failed to adequately consider the impact of these "pos-

8. *Id.*

9. *Id.* (citing AS 23.30.145(a)).

10. The employer in this case, the state, uses salaried in-house lawyers rather than contracting with private firms.

11. *See* Arthur Larson & Lex Larson, Larson's Workers' Compensation Law § 133.09, at 133–41 (2004) (referring to employers' attorneys' "ever-present concern that, if his or her charges get out of line, the [client] will take away its business altogether").

12. One witness was asked to estimate the percentage of resolved cases that "[do] not involve the payment of fees by the employer," another testified about the percentage of claimants' attorneys who "never receive anything," and the third expressed an opinion that ninety-five percent of

the time claimants' attorneys are paid "some fee."

13. The board concluded: "Regarding the employer's contingency argument, we find that the statistics relied on d[o] not include cases where a claimant's counsel withdraws from claims. Furthermore, the statistics and evidence do not reflect how much of an attorney's fee may be compromised in a settlement agreement."

14. AS 23.30.145(a) provides in relevant part that attorney's fees "may not be less than 25 percent on the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 percent of all sums in excess of $1,000 of compensation."

15. *Wien Air Alaska v. Arant*, 592 P.2d 352, 366 (Alaska 1979) (suggesting that "[t]he legislature may wish to examine whether the formula in AS 23.30.145(a) sometimes results in excessive fee

itive contingenc[ies]" potentially arising from the minimum fee statute.

*Wise* held that the contingency factor was a legitimate consideration for the board, and noted that employees' attorneys need to earn more than a "normal hourly fee" on successful cases because they receive nothing on unsuccessful cases.[16] This recognizes the general nature of a contingency fee practice; that is, fees from successful cases ideally serve as a rough counterbalance to unpaid time spent on unsuccessful cases. But *Wise* did not suggest that the board should compare an attorney's income from workers' compensation cases with the hours expended to determine whether there is a net loss before applying the contingency factor. The state's argument lacks statutory or precedential support and appears unworkable on a practical level. Under the state's proposed framework, every time an attorney requested fees, the board would have to hold an individualized hearing in an attempt to determine whether that attorney had been overcompensated in some cases and whether that surplus eclipsed the efforts that had gone uncompensated. We see no statutory basis for requiring the board to undertake this inquiry.

### C. The Board's Findings Were Legally Sufficient.

■ The state argues that the board "failed to adequately describe the factors that it did, and did not, rely upon in fashioning its enhanced hourly rate," and urges us to remand. The state contends that the board failed to "consider and document" material issues, including "the yearly 'normal' rates as well as the impact of minimum percentage fees exceeding those based upon hourly rates."

■ We have stated that "[t]he Board need only make findings with respect to is-sues that are both material and contested. When the Board fails to make a necessary finding, we cannot fill the gap by making our own determination from the record; we must remand to the Board."[17] In *Pioneer Construction v. Conlon*, relied upon by the state, we vacated an attorney's fee award because the lower court failed to explain its reasons for making the award.[18] The lower court had "merely stated that [the employer] was to pay [the claimant] $2,917.50 in attorney fees...."[19] We noted that "[a]ppellate review is facilitated by demonstrating what factors were considered, careful decision making is promoted, and the parties are aided in their determination as to whether to appeal."[20]

Unlike the situation in *Pioneer*, the board in this case explained its reasons for the attorney's fee award. The board explained that the

> claim was vigorously litigated by very competent counsel. The range of litigated benefits to the employees was significant (between $0.00 and $24,300.00 in PPI benefits).... [W]e find the medical evidence was fairly complex. Last, we find the employer raised unique arguments regarding attorney's fees, not previously decided.

The board also pointed to the contingent nature of representing claimants in workers' compensation cases and to the experience and expertise of Cowgill's lawyer. That the board declined to address explicitly the state's "normal fee" and "positive contingency" theories does not render the findings inadequate. The board's implicit rejection of these theories is acceptable because it adequately articulated its justifications for the fee award. And, in any case, our ruling today makes immaterial the state's "normal fee" and "positive contingency" arguments. We conclude that the board's findings were legally sufficient.

awards, awards higher than are necessary to attract counsel into the compensation area").

16. *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 975 (Alaska 1986).

17. *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999).

18. *Pioneer Constr. v. Conlon*, 780 P.2d 995, 1001 (Alaska 1989).

19. *Id.* at 1000.

20. *Id.* at 1001. *See also Stephens v. ITT/Felec Servs.*, 915 P.2d 620, 629 (Alaska 1996) (Matthews, J., dissenting in part) ("Findings arc adequate when, at a minimum, they show that the Board considered each issue of significance, demonstrate the basis for the Board's decision, and are sufficiently detailed so that they afford an opportunity for meaningful judicial review.").

## D. The Board Did Not Abuse Its Discretion by Applying the Contingency Factor.

The state argues that the board abused its discretion by relying on contingency as a factor in its attorney's fee award because it "made no attempt to explain the scope of the contingencies [it] 'found,' made no references to any record evidence supporting such 'findings,' and extended no opportunity to address them." Moreover, the state contends that "[i]t is manifestly unreasonable to require the State to pay enhanced fees based on no more than a presumption." But there is no evidence that the fee was "enhanced" as the state contends. Rather, the contingent nature of representing workers' compensation claimants was one factor among many relied upon by the board. We conclude that the board permissibly exercised its expertise and therefore did not abuse its discretion.

## E. We See No Reason To Revisit *Wise*.

The state asks us to "revisit [our] decisions in *Wise* forward and [to] clarify the scope and application of the contingency factor, [including] whether the contingency factor may be offset by overcompensation elsewhere, or whether that factor should be eliminated from consideration under AS 23.30.145 fee awards." Alternatively, the state essentially advocates an "individualized inquiry into the need for [ ] enhanced compensation." We see no reason or need to "clarify" the permissible use of the contingency factor, aside from reiterating that it is an appropriate factor on which the board may rely. We also conclude that an "individualized inquiry" is neither required by law nor desirable in practice.

## IV. CONCLUSION

Because the board's attorney's fee award was not manifestly unreasonable and because the board's findings were sufficient, we AFFIRM the superior court's judgment affirming the board's award.