*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SANDRA J. RUSCH and BRENDA DOCKTER, | ) ) ) Supreme Court No. S-18620 |
| Appellants, | ) ) Alaska Workers' Compensation Appeals ) Commission Nos. 17-001/17-002 |
| v. | ) ) O P I N I O N |
| SOUTHEAST ALASKA REGIONAL HEALTH CONSORTIUM and ALASKA NATIONAL INSURANCE COMPANY, | ) ) No. 7736 – January 17, 2025 ) ) ) |
| Appellees. | ) |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: J. John Franich, Franich Law Office, LLC, Fairbanks, and David A. Graham, Graham Law Firm, Sitka, for Appellants. Michael A. Budzinski, Meshke Paddock & Budzinski, Anchorage, for Appellees. Nora G. Barlow, Barlow Anderson, LLC, Anchorage, for Amicus Curiae American Property Casualty Insurance Association.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I. INTRODUCTION

The Alaska Workers' Compensation Appeals Commission's (the Commission) award of appellate attorney's fees to two workers' compensation

claimants is before us for the second time.[1]  The claimants settled all issues except attorney's fees in proceedings before the Alaska Workers' Compensation Board (the Board); the Board subsequently awarded the claimants' attorney considerably less than his requested fees.[2]  The Commission affirmed the Board's fee awards, but we reversed that decision.[3]  The claimants then sought fees for their attorneys' work before the Commission, arguing they should be awarded enhanced fees, but the Commission decided the Alaska Workers' Compensation Act (the Act) did not allow enhanced fees for work before the Commission and awarded fees accordingly.[4]  The claimants appealed; we reversed the Commission's decision and vacated the award, clarifying that the Act does allow for enhanced fees and instructing the Commission to consider factors relevant to enhancement on remand.[5]  On remand, the Commission issued a second order but did not change the fee award.  The claimants again appealed.  We again vacate the fee award and remand to the Commission.

## II.  FACTS AND PROCEEDINGS[6]

### A.  Facts

Sitka attorney David Graham began to represent two workers' compensation claimants, Brenda Dockter and Sandra Rusch, in separate proceedings against Southeast Alaska Regional Health Consortium (SEARHC) after the claimants

---

[1]  *See Rusch v. Se. Alaska Reg'l Health Consortium* (*Rusch II*), 517 P.3d 1157 (Alaska 2022).

[2]  *Rusch v. Se. Alaska Reg'l Health Consortium* (*Rusch I*), 453 P.3d 784, 788-89, 792 (Alaska 2019).

[3]  *Id.* at 803-04.

[4]  *Rusch II*, 517 P.3d at 1160-61.

[5]  *Id.* at 1166-67.

[6]  We set out the relevant facts from our prior decisions in this case, adding information from the record as needed.

reached an impasse in their compensation claims.[7] The proceedings were "contentious," with multiple procedural and substantive disputes.[8] The workers' claims, with the exception of attorney's fees, were settled during mediation.[9] Both claimants received significantly higher settlement offers from SEARHC after they hired Graham as their counsel.[10]

The parties proceeded to litigate attorney's fees; that litigation was also contentious and culminated in a joint hearing on both claims before the Board.[11] SEARHC told the Board at the hearing that it was "willing to stipulate to . . . difficulties injured workers face in finding attorneys to represent them, 'particularly in the Juneau venue and the Fairbanks venue.' "[12]

The Board awarded about one-third of the fees Graham sought in Rusch's case, using an hourly rate that was lower than the rate the Board had previously approved for him in settlements.[13] The Board's award to Graham for work through October 2016 was less than the amount SEARHC's attorney billed her clients through the end of July 2016.[14] In its decision the Board reduced Graham's hours because it decided the claimants had not prevailed on certain claims in their settlements, without articulating a framework for its evaluation, and because it disapproved of Graham's

---

[7]     *Rusch I*, 453 P.3d at 787-89.

[8]     *Id.* at 787-91.

[9]     *Id.* at 788-89.

[10]    *Id.* at 806.

[11]    *Id.* at 788-90.

[12]    *Id.* at 790 (quoting SEARHC's attorney). SEARHC acknowledged to the Board that attorneys willing to represent injured workers are "few and far between."

[13]    *Id.* at 792, 797. The Board reduced Graham's hours by about 40% in Dockter's case. *Id.* at 792.

[14]    *Id.* at 806.

billing methods.[15] In setting an hourly rate, the Board considered only the number of times Graham had entered appearances in Alaska workers' compensation proceedings, deciding that his other legal experience was irrelevant.[16]

The claimants, now represented by J. John Franich with Graham's assistance, appealed to the Commission, which affirmed the Board in separate decisions.[17] The claimants appealed the Commission's decisions to us, and we reversed those decisions.[18] Among the issues we addressed in *Rusch I* were (1) the appropriate analysis for fee requests before the Board when the parties settle issues other than attorney's fees;[19] (2) consideration of experience in areas other than workers' compensation in awarding attorney's fees;[20] (3) the Board's process for setting fees in the case, including its use of extra-record factual information collected after the hearing;[21] and (4) application of the workers' compensation presumption analysis to

---

[15]     *Id.* at 792.

[16]     *Id.* at 797.

[17]     *Rusch II*, 517 P.3d 1157, 1159 (Alaska 2022).

[18]     *Id.*

[19]     *Rusch I*, 453 P.3d 784, 795-97 (Alaska 2019). Attorney's fees before the Board are governed by AS 23.30.145(a)-(b). Subsection .145(a) requires the Board to "take into consideration . . . the benefits resulting from the [attorney's] services to the compensation beneficiaries" when making a fee award. Here the Board disallowed some of Graham's time because it decided "the claimants were not successful on claims related to those tasks." *Rusch I*, 453 P.3d at 792. We reversed the administrative decisions about success on claims and required the Board on remand to reevaluate this issue. *Id.* at 796-97.

[20]     *Rusch I*, 453 P.3d at 797-800.

[21]     *Id.* at 800-02.

attorney's fees.[22] The claimants prevailed on all of their appellate points except the last.[23]

After prevailing in the appeal, the claimants sought attorney's fees from this court, asking us to use the modified lodestar approach, which we had recently adopted for Unfair Trade Practices and Consumer Protection Act (UTPA) litigation.[24] We awarded $60,000 total fees to both attorneys for both appeals.[25]

## B.    Proceedings

Shortly after we decided *Rusch I*, the Commission ordered the claimants to file a copy of our order awarding attorney's fees when they received it and required the claimants to file within ten days of our order a motion for attorney's fees for their work in the initial Commission appeal. The claimants did as the Commission directed. In their motion to the Commission for fees, the claimants asked the Commission to use the modified lodestar approach,[26] arguing that our fee award appeared to utilize that method or something similar. They also submitted evidence about hourly rates for the Commission to consider.[27] SEARHC did not submit any evidence with its opposition, instead asking the Commission to strike much of the claimants' evidence.[28] The Commission refused to strike the evidence, allowed all of the attorneys' claimed hours, and decided that $450 an hour, the hourly rate it had awarded in other appeals, was an

---

**22**    *Id.* at 802-03. The workers' compensation presumption analysis applies to factual issues related to the compensability of claims; we rejected use of the presumption analysis here because "the reasonableness of the final [fee] award is not in itself a factual finding." *Id.* at 803.

**23**    *Id.* at 807.

**24**    *See Adkins v. Collens*, 444 P.3d 187 (Alaska 2019).

**25**    *Rusch II*, 517 P.3d 1157, 1159 n.12 (Alaska 2022).

**26**    *Id.* at 1159.

**27**    *Id.* at 1160.

**28**    *Id.*

adequate rate using the factors identified in Alaska Rule of Professional Conduct 1.5(a)[29]; it concluded that allowing enhanced fees above that rate would be contrary to the Workers' Compensation Act.[30]

The claimants appealed the Commission's award, and in *Rusch II*, we reversed the Commission's order and vacated its fee award.[31] In particular, we held that the Commission had erred in construing the Act as not allowing enhanced attorney's fees awards.[32] We instructed the Commission on remand to "evaluate the claimants' arguments about both the overall contingent nature of representing claimants and the difficulties of each claimant's appeal, among the Rule 1.5(a) factors, in determining whether enhancement under the modified lodestar method is appropriate."[33] We expressed concern that the Commission "did not engage with evidence provided by the claimants" when awarding attorney's fees.[34] We also directed the Commission to consider whether a tiered method of awarding fees based on the number of claimants an attorney represents in workers' compensation cases, as outlined

---

[29] Alaska Rule of Professional Conduct 1.5(a) provides that "[t]he factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood[] that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

[30] *Rusch II*, 517 P.3d at 1160.

[31] *Id.* at 1167.

[32] *Id.* at 1164.

[33] *Id.* at 1166.

[34] *Id.*

by SEARHC at oral argument before us, might "impact . . . the availability of representation for the claimants here."[35]

We returned jurisdiction to the Commission in October 2022. The Commission did not solicit additional input from the parties and issued a decision about two months later that did not change the fee award. The Commission focused on determining the appropriate hourly rate, deciding that $450 an hour, which it called both a "lodestar" and a "modified lodestar" fee in its discussion, was adequate. The Commission provided more detailed findings and analysis of the factors outlined in Professional Responsibility Rule 1.5(a) than it had in its prior attorney's fee decisions.[36]

Examining the novelty and complexity of the issues,[37] the Commission found that the litigation involved complex and novel issues, but decided this was "not unusual or different from other appeals which also raise new or unusual issues." The Commission decided that because "$450 per hour is in line with what other attorneys, with similarly complex issues on appeal," had requested and received in the recent past, this rate was "a reasonable and fully compensa[tory] hourly rate for work before the Commission."

The Commission discussed in some detail "the fee customarily charged in the locality for similar legal services."[38] It explained that several experienced workers' compensation attorneys, whom it identified, had requested $450 an hour. The Commission observed that it had awarded $450 an hour to other attorneys practicing in

---

[35]   *Id.* at 1167.

[36]   The Commission also recognized the parties' agreement that certain Rule 1.5(a) factors were not particularly determinative of fees in Rusch's and Dockter's appellate matters.

[37]   *See* Alaska R. Prof. Conduct 1.5(a)(1).

[38]   *See id.* 1.5(a)(3).

Fairbanks, where Franich practices. The Commission did not think the rates charged in Sitka would "differ from other places in Alaska."

The Commission interpreted our directive that it consider the possible impact of a tiered system of fee awards on the availability of representation in these cases as a suggestion that "lawyers in small towns might have a different hourly rate than lawyers in larger communities." In response the Commission took "notice of the prevalence today of the Internet, Zoom, and multiple other electronic products available almost anywhere in Alaska." According to the Commission, this "seemingly mitigates the distance and smallness factors from consideration as deterrents to practice in smaller communities."

With respect to "the amount involved and the results obtained,"[39] the Commission said the only issue was "a continuing dispute" over attorney's fees. The Commission acknowledged that the litigation had "created new law" about attorney's fees. But it said,

> All appellate work should be considered as being of value in clarifying the law applied by the Board and demonstrating that the facts determined by the Board supported the Board's decision . . . . Other parties in previous appeals have contended to the Commission that $450.00 per hour is a proper lodestar amount. The Commission agrees.

The Commission did not discuss the amount involved in the underlying claims.

As for "the experience, reputation, and ability" of the attorneys,[40] the Commission agreed the attorneys were experienced, stating that "[t]heir experience justifies the modified lodestar rate of $450.00 per hour." Finally, the Commission considered contingency as a factor[41] and said the $450-an-hour rate implicitly

---

[39]     *Id.* 1.5(a)(4).

[40]     *Id.* 1.5(a)(7).

[41]     *Id.* 1.5(a)(8) (requiring consideration of "whether the fee is fixed or contingent").

recognized the contingent nature of workers' compensation; it wrote that this rate is how the Commission "acknowledges the contingent nature of" the work. The Commission "decline[d] to award any increase in the hourly rate" because the Commission thought the rate it had been using was "reasonable and fully compensatory for the work performed."

The claimants appeal.[42]

## III. STANDARD OF REVIEW

"Whether the Commission correctly applied the law in determining an award of attorney's fees is a question of law that we review de novo."[43] We review any factual findings made by the Commission for substantial evidence in the record,[44] and "[w]e review the amount of fees awarded for abuse of discretion."[45] "We will find an abuse of discretion when the decision on review is 'arbitrary, capricious, or manifestly unreasonable.' "[46] A tribunal applying a multi-factor test may abuse its discretion "if it considers improper factors . . . , fails to consider . . . mandated factors, or assigns

---

**42** American Property Casualty Insurance Association participated in this appeal as amicus in support of SEARHC.

**43** *Rusch II*, 517 P.3d 1157, 1162 (Alaska 2022) (quoting *Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1066 (Alaska 2011)).

**44** *See id.*

**45** *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 288 (Alaska 2019).

**46** *Alaska State Comm'n for Hum. Rts. v. United Physical Therapy*, 484 P.3d 599, 605 (Alaska 2021) (quoting *Tufco, Inc. v. Pac. Env't Corp.*, 113 P.3d 668, 671 (Alaska 2005)).

disproportionate weight to some factors while ignoring others."[47]  We review de novo whether the Commission correctly applied our mandate on remand.[48]

## IV.   DISCUSSION

### A.   Attorney's Fees In Workers' Compensation

#### 1.   Legal framework

The Act permits awards of attorney's fees to claimants only when they win, making representation of workers' compensation claimants a type of contingent-fee practice.[49]  But unlike contingent-fee arrangements in other areas such as torts litigation, attorney's fees for representing workers' compensation claimants are regulated directly by adjudicators:  with two exceptions not applicable here, the Act forbids an attorney from accepting attorney's fees for representing claimants unless the Board, the Commission, or a court approves the fees.[50]  "Payment of any fee is contingent upon approval of the [agencies] or the court, regardless of the contractual arrangement" a client makes with an attorney.[51]  When an appeal to the Commission is needed, a successful claimant is entitled to an award of full reasonable attorney's fees.[52]

---

[47]    *Simone H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 284, 287 (Alaska 2014) (first alteration in original) (quoting *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008)).

[48]    *See Williams v. Crawford ex rel. Est. of McVey*, 47 P.3d 1077, 1079-80 (Alaska) (reviewing de novo whether superior court followed mandate), *as amended on denial of reh'g* (June 24, 2002).

[49]    *Rusch II*, 517 P.3d 1157, 1162 (Alaska 2022) (citing *contingent fee*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

[50]    *Id.*; *see* AS 23.30.260.  The two exceptions are (1) a one-time $300 fee when an attorney does not enter an appearance for the claimant and (2) attorney's fees in a negotiated settlement that under AS 23.30.012 does not require Board approval. AS 23.30.260(b).

[51]    *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 975 n.8 (Alaska 1986).

[52]    AS 23.30.008(d).

Before the Commission's creation, former Alaska Appellate Rule 508 and our precedents interpreting it governed appellate attorney's fee awards in appeals both before us and before the superior court.[53] We have construed AS 23.30.008, the statutory section regarding attorney's fees for work before the Commission, as requiring fee awards in the Commission "to follow the same rules as appellate attorney's fees awards in the courts."[54] The Commission also has decided AS 23.30.008(d) was modeled on former Appellate Rule 508(g).[55] As a result, our precedents interpreting former Appellate Rule 508(g) apply to fee awards for Commission appeals.

When an employer controverts or otherwise resists payment of compensation, AS 23.30.145 imposes the costs a claimant incurs to secure that compensation, including attorney's fees, on the employer; the statute therefore has a fee-shifting aspect. In Commission appeals, a successful party is entitled to an award of "fully compensatory and reasonable" attorney's fees, but the Commission cannot award attorney's fees against an injured worker unless "the worker's position on appeal was frivolous or unreasonable or the appeal was taken in bad faith."[56] We have repeatedly stated that attorney's fees awarded to claimants' counsel must be adequate

---

[53]    *See Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1067-68 & n.16 (Alaska 2011).

[54]    *Rusch II*, 517 P.3d at 1162 (quoting *Lewis-Walunga*, 249 P.3d at 1067).

[55]    *See Lewis-Walunga*, 249 P.3d at 1067-68 (quoting *Mun. of Anchorage v. Syren*, AWCAC Dec. No. 015 at 2 (Aug. 3, 2007), https://labor.alaska.gov/WCcomm/m emos-finals/F_06-003.pdf; *Doyon Drilling, Inc. v. Whitaker*, AWCAC Dec. No. 008 at 2 n.3 (Apr. 14, 2006), https://labor.alaska.gov/WCcomm/memos-finals/F_05-008-attorney-fees.pdf).

[56]    AS 23.30.008(d); *see Whaley v. Alaska Workers' Comp. Bd.*, 648 P.2d 955, 960 (Alaska 1982) (adopting federal standard from Title VII employment discrimination appeals for state workers' compensation appellate fee awards under former Appellate Rule 508(e) (citing *Christianburg Garment Co. v. Equal Emp. Comm'n*, 434 U.S. 412, 422 (1978))).

"to ensure that competent counsel are available to represent injured workers."[57] The objective of ensuring that injured workers have access to legal representation is similar to goals in fee-shifting statutes in other areas such as consumer protection.[58]

In *Rusch II* we reversed the Commission's decision that the Act did not authorize enhanced appellate attorney's fees.[59] We relied on several of our precedents, particularly *Wise Mechanical Contractors v. Bignell*.[60] In *Bignell*, we affirmed a superior court's award of appellate attorney's fees that "was twice the fee the claimant's attorneys 'would have received had they been working on an hourly fee basis.' "[61] Quoting our precedent construing the Act, we reiterated that "high awards for successful claims may be necessary for an adequate overall rate of compensation, when counsel's work on unsuccessful claims is considered."[62] We stated in *Bignell* that "full compensation is not necessarily limited to an award of an hourly fee."[63] In cases about both appellate fees and Board-awarded fees, we have applied the principle that fees

---

**57**     *Bignell*, 718 P.2d at 975; *see also Rusch II*, 517 P.3d at 1164; *Rusch I*, 453 P.3d 784, 806-07 (Alaska 2019).

**58**     *See Adkins v. Collens*, 444 P.3d 187, 200 & n.40 (Alaska 2019) (construing reasonable fees provision in UTPA case as allowing enhancement "to induce competent counsel to litigate claims when payment for legal services is contingent on success in the case"); *see also State, Dep't of Health & Soc. Servs. v. Okuley*, 214 P.3d 247, 254-56 (Alaska 2009) ("We have permitted enhanced fees in both public interest and class action cases because of the risk of nonpayment and the sound policy of encouraging capable representation." (footnote omitted)).

**59**     *Rusch II*, 517 P.3d at 1165-66.

**60**     718 P.2d at 971.

**61**     *Rusch II*, 517 P.3d at 1165 (quoting *Bignell*, 718 P.2d at 972).

**62**     *Bignell*, 718 P.3d at 973 (quoting *Wien Air Alaska v. Arant*, 592 P.2d 352, 366 (Alaska 1979), *overruled on other grounds by Fairbanks N. Star Borough Sch. Dist. v. Crider*, 736 P.2d 770, 775 (Alaska 1987)); *see id.* at 975 ("If an attorney who represents claimants makes nothing on his unsuccessful cases and no more than a normal hourly fee in his successful cases, he is in a poor business.").

**63**     *Id.* at 973.

awarded to claimants' attorneys should be adequate to compensate for unsuccessful claims.[64]

We declined in *State, Department of Revenue v. Cowgill* to reconsider *Bignell*, seeing "no reason or need to 'clarify' the permissible use of the contingency factor" in workers' compensation fee awards.[65] In *Cowgill* we affirmed the Board's decision awarding the claimant's attorney an hourly fee that was significantly higher than rates for employers' attorneys and rejected the employer's argument that employers' attorney's fees were an adequate measure of the market rate for claimants' attorneys.[66]

Unlike fees awarded by the Board, which require success on the underlying claim and take into consideration "the benefits resulting from the [attorney's] services,"[67] appellate attorney's fees in workers' compensation are based on status as a successful party.[68] We have interpreted "successful party" to mean that claimants are entitled to full reasonable fees when they win a significant issue on appeal.[69] If a claimant wins only minor or side issues, they may recover a lower amount

---

[64] *Id.* at 975; *Rusch II*, 517 P.3d at 1164; *State, Dep't of Revenue v. Cowgill*, 115 P.3d 522, 524 n.7 (Alaska 2005); *Rusch I*, 453 P.3d 784, 806-07 (Alaska 2019).

[65] 115 P.3d at 527.

[66] *Id.* at 524-25.

[67] AS 23.30.145(a). Attorney's fees under AS 23.30.145(b) must be awarded when an employer "fails to file timely notice of controversy or fails to pay compensation . . . within 15 days after it becomes due"; the award of costs and fees "is in addition to the compensation or medical and related benefits" that the Board orders.

[68] *See Rusch II*, 517 P.3d at 1162.

[69] *Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1068 (Alaska 2011).

of fees.[70]  But claimants are entitled to an appellate fee award even when they do not win all points on appeal:  they must simply succeed on a significant issue.[71]

### 2. Implementation in agency proceedings

At oral argument before us in *Rusch II*, SEARHC outlined the Board's current process for determining an attorney's hourly rate, which awards a tiered hourly rate based on an attorney's experience:  "[A]ttorneys move to higher tiers as they represent more claimants, and the hourly rate for each tier appears to increase when the Board is convinced that claimants' attorneys as a whole are undercompensated."[72]  SEARHC's summary is generally consistent with the agency decisions in these claims, although the hourly rate table in the decisions suggests that the tiered rates represent maximum rates rather than standard hourly rates awarded to all claimants' attorneys.[73]  Nothing in the agency decisions or in SEARHC's summary explains how the Board decides when an attorney should move to a higher tier, when to increase rates for all claimants' counsel, or exactly how many tiers there are.

---

[70] *See Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1193 (Alaska 1993) (affirming denial of full fees in superior court appeal because claimant won only side issue).

[71] *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1182 (Alaska 2014) ("[A] claimant who prevails on '*a* significant issue' on appeal is a successful party; there is no requirement that the claimant prevail on all issues or even the main issue." (emphasis in original) (quoting *Lewis-Walunga*, 249 P.3d at 1068)).

[72] *Rusch II*, 517 P.3d at 1167.

[73] *Rusch v. Se. Alaska Reg'l Health Consortium*, AWCAC Dec. No. 245, at 25 (Mar. 29, 2018) (setting out table compiled by Board), https://labor.alaska.gov/WCcomm/memos-finals/D_245.pdf, *rev'd in part Rusch I*, 453 P.3d 784, 806-07 (Alaska 2019); *see also Longway-Marotta v. Colaska, Inc.*, AWCB Dec. No. 17-0137, 2017 WL 6402683, at *30 (Dec. 8, 2017) (awarding requested hourly rate of $375 over employer's objection and observing that rate was "commensurate with what other claimant's lawyers charge and is in fact less than many").

The Commission evidently uses a similar tiered process: in this appeal, amicus summarized the Commission's process for awarding fees, in which attorneys request an hourly rate depending on their experience. According to amicus, "[a]ll parties have understood that the hourly rate sought by claimants' counsel includes a 'risk premium' to account for the contingent nature of the workers' compensation system." The claimants do not disagree that this is "the actual practice concerning attorney fee motions" before the Commission, but they "dispute the intent, understandings, and motivations attributed to claimants and their attorneys." Although fee awards in the Commission and the Board are governed by different sections of the Act, it appears that the two agencies have used the same hourly rates for claimants' attorneys[74] and, at least until *Rusch I*, have both used a tiered system that depends on experience in workers' compensation matters to the exclusion of other factors to determine an hourly rate. Nothing in the process the parties described evidences a further individualized analysis taking into account risk, difficulty, novelty, skill, or any other factor specific to a given case when determining a claimant's attorney's fees, even in cases where a claimant's attorney seeks an enhancement.

### 3. The modified lodestar method

The modified lodestar method is used to award attorney's fees under statutes that authorize fee shifting for certain types of claims.[75] We first discussed the modified lodestar method, a "blended approach" to attorney's fee awards developed in

---

[74] For example, in 2020 both the Board and the Commission awarded $400 an hour to experienced claimants' attorneys. *Cavitt v. D&D Servs.*, AWCB Dec. No. 20-0012, 2020 WL 1551422, at *12 (Mar. 6, 2020) (awarding $400 an hour); *Trometter v. State*, AWCB Dec. No. 20-0112, 2020 WL 7386018, at *18 (Dec. 11, 2020) (same). The Commission said in its summary of fees it had awarded $400 an hour in 2020.

[75] *See Adkins v. Collens*, 444 P.3d 187, 199 & n.33 (Alaska 2019).

federal courts, in *Edwards v. Alaska Pulp Corp.*[76]  As we have explained, courts using the modified lodestar approach "first calculate a baseline attorney's fee award by determining the reasonable number of hours the attorney worked and multiplying that by a reasonable hourly rate."[77]  The result is the lodestar amount.  The court may then "adjust this baseline 'lodestar' amount to arrive at the final fee award."[78]  The court "may consider a variety of factors in calculating the lodestar and deciding whether to adjust it," including 12 factors called the *Johnson-Kerr* factors.[79]  Those are similar to the factors in Alaska Rule of Professional Conduct 1.5(c) but include two additional factors:  the undesirability of the case and awards in similar cases.[80]

In *Adkins v. Collens* we decided that an adjudicator using the modified lodestar method can use any of the *Johnson-Kerr* factors when considering an enhancement, even if that factor has been used to determine the lodestar fee.[81]  Contingency can thus be considered both when establishing the lodestar and when determining whether enhancement of a lodestar fee is justified in specific litigation.  We adopted this approach because "a contingency enhancement in the second step of the lodestar determination can provide a 'risk premium' necessary to induce competent counsel to litigate claims when payment for legal services is contingent on success in

---

[76]  920 P.2d 751, 757-79 (Alaska 1996) (permitting superior court to award fees under either modified lodestar or percentage of fund analysis in common fund case).

[77]  *Adkins*, 444 P.3d at 199; *see also Edwards*, 920 P.2d at 757.

[78]  *Adkins*, 444 P.3d at 199.

[79]  *Id.*

[80]  *Id.* at 199-200.  Three *Johnson-Kerr* factors — the time and labor required, the novelty and difficulty of questions involved, and the skill required to perform the legal services — are consolidated in Alaska Professional Conduct Rule 1.5(a)(1). *Compare id.* at 199, *with* Alaska R. Prof. Conduct 1.5(a).

[81]  *Adkins*, 444 P.3d at 199-200.

the case."[82]  This is consistent with our goal of awarding adequate fees in workers' compensation cases so that competent counsel are available to represent injured workers.

In *Rusch II*, we held that the modified lodestar method was consistent with the considerations underlying awards of attorney's fees in workers' compensation cases.[83]  Recognizing that the Commission had "erred in construing the Act as prohibiting enhancement of a lodestar fee in all cases," we concluded that the Act did not require enhancement of lodestar fees in all cases.[84]  But we held that such enhancement was not prohibited by the Act and should be considered in the context of the Rule 1.5(a) factors as applied to individual fee awards.[85]  We directed the Commission to evaluate the claimants' arguments related to the Rule 1.5(a) factors "in determining whether enhancement under the modified lodestar method is appropriate."[86]  We did not specifically direct the Commission to look to the *Johnson-Kerr* factors as opposed to the Rule 1.5(a) factors.[87]

With this framework in mind, we turn to the Commission's decision on remand.

**B.  The Attorney's Fee Award On Remand Was An Abuse Of Discretion.**

On remand, the claimants asked the Commission to apply the modified lodestar method for awarding attorney's fees and argued that several factors used in that method justified an enhanced hourly rate of $600 an hour, an increase of about one-third over the "non-contingent lodestar" rate of $450 an hour that they sought.

---

[82]  *Id.* at 200.

[83]  517 P.3d 1157, 1163-66 (Alaska 2022).

[84]  *Id.* at 1165-66.

[85]  *Id.* at 1166.

[86]  *Id.*

[87]  *Id.*

SEARHC disputed the applicability of the modified lodestar approach and argued that even if it applied, none of the factors justified an enhanced hourly rate for the claimants' attorneys.

As we have noted, in its order following remand, the Commission made findings regarding relevant Rule 1.5(a) factors and "reaffirm[ed]" its decision that $450 an hour was reasonable and fully compensatory. The Commission called the rate it reaffirmed both a "lodestar amount" and a "modified lodestar amount," making it somewhat difficult to discern precisely what the Commission intended. SEARHC suggests that the tiered method the workers' compensation agencies currently use to award attorney's fees results in a "modified lodestar" fee to claimants and that the claimants misunderstand the terminology. We disagree. Using the modified lodestar method requires consideration of individual factors as applied to individual cases; awarding fees pursuant to a tiered system that looks only at experience in workers' compensation does not comply with that method.

Turning to the Commission's specific findings in these matters, it is again difficult to understand the Commission's methodology and what it meant by referring to the $450 an hour billing rate as both a lodestar and modified lodestar rate. If the Commission was trying to adhere to our instruction to use the modified lodestar method, it is possible that the Commission decided that $450 an hour was an appropriate lodestar and that no enhancement was warranted. This reading of the Commission's decision is supported by its explicit statement "declin[ing] to award any increase in the hourly rate." It is also possible that the Commission simply decided to use different terminology but preserve the status quo in its fee awards; this interpretation is supported by the Commission's consistent reliance on awards it made in past cases to explain its order on remand. Under either analysis, we hold that the fees awarded were an abuse of discretion in light of the findings the Commission made related to the Rule 1.5(a) factors.

The Commission's discussion of the Rule 1.5(a) factors indicates that while it made findings about each factor,[88] it relied primarily on past awards it had made when awarding fees in this case. We observe that the Commission's consideration of its own prior attorney's fee awards in addressing some of the Rule 1.5(a) factors was not in itself an error. The litigants here agree that the Commission's prior attorney's fee awards reflect attorneys' experience in workers' compensation. And the Commission has indicated that its prior awards "implicitly" recognize the contingent nature of representing claimants in Alaska workers' compensation claims. An attorney's experience (although not solely in worker's compensation), the fact that a fee is contingent rather than fixed, and the customary fees awarded for similar work are all factors the Commission must consider in arriving at an appropriate fee award.

The claimants assert that the evidence they submitted to the Commission regarding fees supported a higher billing rate for contingent work, and suggest that the Commission should not have considered its own prior attorney's fee awards in determining a reasonable hourly billing rate in this matter. But the evidence submitted by claimants was susceptible to more than one interpretation and could support a range of reasonable hourly rates for contingency work, and the Commission was free to consider its own prior awards, which are accessible to the public, in analyzing relevant Rule 1.5(a) factors. Indeed, the claimants' original motion for attorney's fees invited

---

[88] The Commission is not required to make findings about factors that the parties agree do not affect the case. Similarly, if the parties agree on an hourly rate or the employer does not oppose a requested hourly rate, neither the Board nor the Commission needs to make findings about factors related to fee awards. The Board is required to make findings of fact about issues that are *contested* and material. *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999). We instructed the Board in *Rusch I* to make findings about all of the Rule 1.5(a) factors because the parties sharply disagreed about the appropriate attorney's fees in both claimants' cases and the Board's stated rationale for the fee award was inconsistent with the amount awarded. *Rusch I*, 453 P.3d 784, 798-99 (Alaska 2019).

the Commission to consider the fees it had awarded in other appeals, observing that the Commission was "in a better position than counsel to know what hourly rates [it] currently awards as attorney['s] fees in other cases."

A problem arises, however, when the Commission relies on its tiered rubric of attorney's fee awards to the exclusion of other, relevant Rule 1.5(a) factors. Here, the Commission cited or discussed its prior fee awards to justify the result it reached with regard to each of the contested Rule 1.5(a) factors. It may be that in some cases, the factors informed by prior attorney's fee awards — the attorney's experience, the contingent or non-contingent nature of the work, and the customary fee awarded for similar work — are the only or primary factors at issue in determining a reasonable attorney's fee award. But when the parties disagree about the applicability of other factors, as they did here, the modified lodestar method requires consideration of more than these three factors. The Commission's decision placed disproportionate weight on these three factors; this was an abuse of discretion.

The Commission also ignored its own findings about factors that favored enhancing the fees here. The Commission found that the issues raised in the claimants' appeals were complex and novel. But in the next breath, the Commission discounted this factor, writing that novelty or complexity did not make the appeal "unusual or different from other appeals which also raise new or unusual issues." The Commission justified its continued award of $450 an hour because it was "in line with what other attorneys, with similarly complex issues on appeal and with similar experience and expertise, asked for and received in the last year." The Commission identified five proceedings in which it awarded fees to successful claimants' attorneys from 2020 to 2022; the hourly rate awarded to experienced attorneys increased from $400 to $450 an

hour over those two years. Of the proceedings cited, three were appeals[89] and two were employers' petitions for review which the Commission denied.[90]

The Commission's rationale for not enhancing the fees is unpersuasive. While some of the appeals the Commission cited involved novel and complex issues, the Commission's denial of review in other cases suggests that the issues raised in those proceedings were either not novel or not so important as to justify review. The Commission did not explain why a proceeding denying a petition for review was novel or complex. Moreover, the Commission's repeated reliance on the fees awarded in past cases to other experienced attorneys, presumably based on its tiered fee structure, supports the claimants' assertion that the Commission was resisting compliance with our directions on remand.

Regarding another factor — the amount involved and the results obtained — the Commission acknowledged that the claimants' cases had created new law about attorney's fee awards before the Board and the Commission.[91] But the Commission

---

[89] Two of these cases were similar to *Rusch* in that attorney's fees were awarded after the claimants were successful on appeal to us. *Vue v. Walmart Assoc., Inc.*, 475 P.3d 270 (Alaska 2020); *Roberge v. ASRC Constr. Holding Co.*, 503 P.3d 102 (Alaska 2022). The third appeal resulted in a remand to the Board to reconsider its award of attorney's fees. *Williams v. Harnish Grp., Inc.*, AWCAC Dec. No. 284 (Mar. 17, 2021), https://labor.alaska.gov/WCcomm/memos-finals/D_284.pdf.

[90] ALASKA WORKERS' COMP. APPEALS COMM'N, ANNUAL RPT. FOR CALENDAR YEAR 2021 at 16 (Mar. 11, 2022), https://labor.alaska.gov/WCcomm/documents/CY2021_Annual_Report.pdf (listing *Lynden, Inc. v. Dale* and *Medical Park Family Care v. Hughes* as petitions for review).

[91] In our view the Commission minimized the number of novel issues presented here and the claimants' success on those issues. Initially we note our disagreement with the Commission's characterization of the issues before the Board as "not novel nor difficult" and "resolved through settlement." The Board hearing that spawned these appeals involved contentious litigation about the amount of attorney's fees SEARHC had to pay after other issues in the claim were resolved through

effectively discounted this factor as ever justifying an enhancement, writing, "All appellate work should be considered as being of value in clarifying the law applied by the Board and demonstrating that the facts determined by the Board supported the Board's decision."

The Commission's dismissive comments effectively removed this factor from consideration not only in this case, but in any case. We acknowledge that all appellate work has value, most clearly to clients, but this factor requires an adjudicator to consider whether the amount involved in the litigation or the result an attorney obtains in a case merits a higher fee. This factor can distinguish cases involving routine application of substantial evidence review, with little impact on the legal rules governing future cases, from cases that create new precedent.

Both the novelty factor and the results factor can reflect the inherent risk of litigating new questions about, or developments in, the law: there is always a risk that an adjudicator will reject a novel or untested legal theory, just as the Commission did here before we reversed its decisions. A case with a broad impact on many cases or one that significantly develops understanding of applicable law, like *Rusch I*, should be considered to have a greater result than a case involving the routine application of law to facts that impacts only one claimant. Here the Commission abused its discretion by ignoring findings it made related to two factors that merited enhancement of the basic fee award that it routinely used in other cases.

---

mediation, with multiple issues briefed on appeal to us. *Rusch I*, 453 P.3d 784, 788-89 (Alaska 2019). In *Rusch I* we reversed most of the Commission's 2018 decision, including its affirmance of the Board's refusal to credit any of Graham's experience outside of workers' compensation and the Board's evaluation of the issues on which the claimants prevailed. *Id.* at 795-801. We noted that the question of evaluating a workers' compensation settlement for purposes of an attorney's fee award was a matter of first impression, and we adopted a legal rule that requires further action from the Board on remand. *Id.* at 795-97.

The Commission's repeated and seeming exclusive reliance on certain factors while ignoring others resulted in a fee award that was manifestly unreasonable and an abuse of discretion. On remand, the Commission must enhance the fee awards to account for the findings it has already made. The Commission is not required to award the precise hourly rate the claimants seek, but it must award some enhancement to account for factors that favored enhancement. We leave to the Commission the choice of enhancing the hourly rate, at the first stage of the modified lodestar method, or the overall fee award, at the second stage of the modified lodestar method, or both. But the Commission must adhere to its own findings supporting enhancement. And to be clear, it must apply the modified lodestar method.[92] Moreover, to the extent that the *Johnson-Kerr* factors are not fully captured in the Rule 1.5(a) factors, we clarify now that the Commission must consider all relevant *Johnson-Kerr* factors in applying the modified lodestar method.

## C.  Due Process Does Not Require An Evidentiary Hearing On Remand In This Case.

The claimants maintain that the Commission denied them due process by not allowing them (1) to present evidence about attorney's fees in rural Alaska or (2) to question fee awards in other Commission appeals. They also argue that the Commission must provide an evidentiary hearing whenever there is a dispute about attorney's fees.

After summarizing SEARHC's argument related to a tiered system of fee awards "based on attorneys' experience representing claimants," we directed the Commission in *Rusch II* to consider on remand "the possible impact of this method of

---

[92]   Again, we clarify that application of the modified lodestar method does not require enhancement of the lodestar fee at the second stage of the analysis where it is not warranted, but does require consideration of whether such enhancement is warranted. *Adkins v. Collens*, 444 P.3d 187, 199 (Alaska 2019).

awarding fees on the availability of representation for the claimants here."[93]   We observed that awarding fees in this manner "rewards attorneys in markets with more workers' compensation claimants, as these attorneys can more easily specialize in claimants' cases," and we tied our concern to SEARHC's "acknowledgement . . . about claimants' difficulties finding attorneys to represent them in smaller cities."[94]

The Commission misunderstood our directions to it, interpreting our decision as "suggest[ing] lawyers in small town[s] might have a different hourly rate than lawyers in larger communities."  The Commission, after noting the existence of technological innovations, including Zoom, said that technology "seemingly mitigates the distance and smallness factors . . . as deterrents to practice in smaller communities."

The claimants argue with respect to this point that "the Commission's findings are not supported by substantial evidence and denied them the due process right of presenting additional evidence."  SEARHC now contends that "[t]here is no shortage of competent workers' compensation attorneys in Alaska" despite its willingness to stipulate to the Board that "[i]t's difficult for [injured employees] to find" attorneys to represent them and these attorneys are "few and far between, particularly in the Juneau venue and the Fairbanks venue."  The parties do not dispute that the Commission's annual reports show lower representation rates for claimants than for employers in Commission appeals involving injured workers and their employers.

In *Rusch II*, we directed the Commission "to consider the possible impact of [a tiered] method of awarding fees on the availability of representation for the claimants here" because both claimants lived in smaller communities in Southeast

---

[93]     *Rusch II*, 517 P.3d 1157, 1167 (Alaska 2022).

[94]     *Id.*  Of the attorneys listed in the Commission's first *Rusch* decision who were paid the top rate, all but two practiced in the Anchorage area. *Rusch v. Se. Alaska Reg'l Health Consortium*, AWCAC Dec. No. 245, at 25 (Mar. 29, 2018) (setting out table compiled by Board), https://labor.alaska.gov/WCcomm/memos-finals/D_245.pdf, *rev'd in part Rusch I*, 453 P.3d 784, 806-07 (Alaska 2019).

Alaska, one of the areas in the state with few attorneys available to represent injured workers, as SEARHC acknowledged to the Board.[95] Dockter lived in Sitka, where Graham practices; Rusch lived in Klawock and testified at the Board hearing about the difficulty she faced getting an attorney, which she attributed to her residence in a small town. Graham told the Board that one reason he does not represent more workers' compensation claimants is because he can make more money practicing in other areas of law, and the Board excluded the testimony of a Juneau attorney who would have testified about why he did not accept workers' compensation cases.

We did not require the Commission to consider whether attorneys in smaller communities charge different rates overall than attorneys in larger communities, and as a result, there was no need for a hearing about the rates charged in smaller communities. Rather, our decision expressed concern about the method the Commission used to award hourly rates in workers' compensation cases and the impact that method could have on the availability of counsel in this case. More broadly, and consistent with facts that SEARHC was willing to stipulate to at the Board hearing, we required the Commission to consider whether there may be a link between the scarcity of attorneys in smaller markets and the tiered system of fee awards outlined by SEARHC. If attorneys in smaller communities cannot gain the experience needed to get high fees in workers' compensation cases, they may be dissuaded from representing workers' compensation claimants, exacerbating the scarcity of claimants' attorneys in those communities.

The Commission has stated that the Board is "well aware of the lack of attorneys available to assist large numbers of unrepresented claimants" and is also "well aware of the fact that represented claimants frequently are more successful than unrepresented claimants . . . primarily because attorneys are skilled in collecting and

---

[95] *Rusch II*, 517 P.3d at 1167.

presenting the kind of evidence necessary to succeed in a workers' compensation case."[96]  In its order on remand here the Commission asserted that it "takes seriously the need for attorneys willing and able to handle workers' compensation disputes on behalf of injured workers," but then refused to meaningfully consider the claimants' request for enhanced fees that might provide an incentive for attorneys to take on workers' cases.  It is unclear whether the possibility of higher fee awards will greatly expand the pool of attorneys willing to represent injured workers in their compensation claims, but simply restating the problem does not advance a solution to it.

The claimants additionally argue that due process required the Commission to afford them an opportunity to question the Commission's use of fee awards in other cases to determine a reasonable fee here.  They rely in part on *Rusch I* to make this argument.  But as we have already noted, the claimants invited the Commission to consider the fees it had awarded in other appeals, telling the Commission that it was "in a better position than counsel to know what hourly rates [it] currently awards as attorney['s] fees in other cases."  In contrast, before the Board they questioned the Board's use of information compiled from the Board's database: Graham said he would "like to know what evidence the Board [was] relying on" and asserted that he had a right to see the evidence so he could present an argument about it.  Moreover, the Board collected data that went beyond the fees awarded in recent cases, which is the information the Commission relied on in its decision here.[97]  We acknowledge, as we have mentioned before,[98] that the Commission's fee awards are not

---

[96]    *Dockter v. Se. Alaska Reg'l Health Consortium*, AWCAC Dec. No. 246, at 36 (Mar. 29, 2018), https://labor.alaska.gov/WCcomm/memos-finals/D_246.pdf; *Rusch v. Se. Alaska Reg'l Health Consortium*, AWCAC Dec. No. 245, at 36 (Mar. 29, 2018), https://labor.alaska.gov/WCcomm/memos-finals/D_245.pdf.

[97]    *Rusch I*, 453 P.3d 784, 792 (Alaska 2019).

[98]    *Rusch II*, 517 P.3d at 1166 n.57 (quoting *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 293 & n.40 (Alaska 2019)).

as easy to access as the Board's because the Commission does not routinely make them available either on the Commission's website or on electronic legal databases. Nonetheless, the fee awards are publicly available, and the claimants here in effect told the Commission it could use its knowledge of fees awarded in other cases to establish fees in their cases. We thus see no reason that due process requires a hearing on remand.

The claimants also contend more generally that due process requires the Commission to hold an evidentiary hearing on a request for attorney's fees whenever there is a legal or factual dispute. Acknowledging that SEARHC failed to present any evidence that might give rise to a factual dispute, they nonetheless argue that they have a right to a hearing on their motion for appellate fees before the Commission. SEARHC asks us to affirm the Commission's decision but asserts that some factors relevant to reasonable fee awards "call for evidence that could be more fully developed" through use of additional process.

We decline to require a hearing on remand. This is our second remand to the Commission. We have found nothing in the record suggesting that either party has ever asked the Commission to hold an evidentiary hearing on the matter. Neither party's brief in *Rusch II* asked us to order an evidentiary hearing on remand. Appellate attorney's fees are generally awarded without a hearing, with evidence about fees submitted by means of affidavits, as the claimants did here. The Commission has the discretion to order hearings on motions for attorney's fees,[99] but its regulations about attorney's fees do not require a hearing.[100] The parties can certainly ask the Commission for a hearing on remand, but we leave the resolution of any such request to the discretion of the Commission.

---

[99] AS 23.30.128(c).

[100] 8 Alaska Administrative Code (AAC) 57.260.

**D.** **We Decline To Adopt The Multistep Process Outlined In Claimants' Brief.**

The claimants ask us to adopt "specific procedural guidelines" for the Commission, relying on Florida law as a basis. They outline a 16-step process that they contend will "promote fairness and uniformity," among other benefits. Some of the steps would use set multipliers under specific circumstances to enhance fees.

We decline to adopt specific guidelines beyond requiring the Commission to employ the modified lodestar method when there is a dispute about the appropriate fee award.[101] Our cases about attorney's fees have consistently used multifactor tests that allow an adjudicator discretion to consider relevant factors and arrive at a reasonable award.[102] In addition, we do not have a record before us in this case that would allow us to determine what fee level would be sufficient to encourage counsel to practice in this area so as to optimize a level of representation of claimants. Rather than develop or adopt a new multistep process for the award of attorney's fees in workers' compensation cases, we consider it more appropriate to allow the agencies to implement our recent decisions explaining what factors must be considered when attorney's fees are contested.

We recognize that this litigation has been protracted and that the Commission has resisted changing its method of awarding fees. But in this decision we reiterate that we require the Commission to use the modified lodestar method to award attorney's fees when the parties dispute the amount of a fee award. We also direct the

---

[101] Attorneys for claimants are not required to seek enhanced fees, nor is the Commission required to use the modified lodestar method if the parties agree to an hourly rate. Also, the Commission does not need to make findings about factors that the parties agree are irrelevant.

[102] *See, e.g.*, *Rusch I*, 453 P.3d 784; *Wise Mech. Contractors v. Bignell*, 718 P.2d 971 (Alaska 1986); *Pioneer Constr. v. Conlon*, 780 P.2d 995, 1000-01 (Alaska 1989) (remanding for findings justifying multiplier).

Commission to enhance the fees awarded to the claimants based on the findings the Commission made in its decision currently under review.

## V.  CONCLUSION

We VACATE the Commission's fee award and REMAND to the Commission for further proceedings consistent with this opinion.